BREARD *v.* GREENE, WARDEN

No. 97–8214 (A–732).   Decided April 14, 1998*

---

*Together with No. 97–1390 (A–738), *Republic of Paraguay et al.* v. *Gilmore, Governor of Virginia, et al.,* on application for stay or injunction and on petition for writ of certiorari to the United States Court of Appeals for the Fourth Circuit, No. 97–8660 (A–767), *In re Breard,* on application for stay and on petition for writ of habeas corpus, No. 125, Orig. (A–771), *Republic of Paraguay et al.* v. *Gilmore, Governor of Virginia, et al.,* on application for temporary restraining order or preliminary injunction and on motion for leave to file a bill of complaint.

PER CURIAM.

Angel Francisco Breard is scheduled to be executed by the Commonwealth of Virginia this evening at 9 p.m. Breard, a citizen of Paraguay, came to the United States in 1986, at the

age of 20. In 1992, Breard was charged with the attempted rape and capital murder of Ruth Dickie. At his trial in 1993, the State presented overwhelming evidence of guilt, including semen found on Dickie's body matching Breard's DNA profile and hairs on Dickie's body identical in all microscopic characteristics to hair samples taken from Breard. Breard chose to take the witness stand in his defense. During his testimony, Breard confessed to killing Dickie, but explained that he had only done so because of a Satanic curse placed on him by his father-in-law. Following a jury trial in the Circuit Court of Arlington County, Virginia, Breard was convicted of both charges and sentenced to death. On appeal, the Virginia Supreme Court affirmed Breard's convictions and sentences, *Breard* v. *Commonwealth*, 248 Va. 68, 445 S. E. 2d 670 (1994), and we denied certiorari, 513 U. S. 971 (1994). State collateral relief was subsequently denied as well.

Breard then filed a motion for habeas relief under 28 U. S. C. §2254 in Federal District Court on August 20, 1996. In that motion, Breard argued for the first time that his convictions and sentences should be overturned because of alleged violations of the Vienna Convention on Consular Relations (Vienna Convention), April 24, 1963, [1970] 21 U. S. T. 77, T. I. A. S. No. 6820, at the time of his arrest. Specifically, Breard alleged that the Vienna Convention was violated when the arresting authorities failed to inform him that, as a foreign national, he had the right to contact the Paraguayan Consulate. The District Court rejected this claim, concluding that Breard procedurally defaulted the claim when he failed to raise it in state court and that Breard could not demonstrate cause and prejudice for this default. *Breard* v. *Netherland*, 949 F. Supp. 1255, 1266 (ED Va. 1996). The Fourth Circuit affirmed. *Breard* v. *Pruett*, 134 F. 3d 615, 620 (1998). Breard has petitioned this Court for a writ of certiorari.

In September 1996, the Republic of Paraguay, the Ambassador of Paraguay to the United States, and the Consul General of Paraguay to the United States (collectively Paraguay) brought suit in Federal District Court against certain Virginia officials, alleging that their separate rights under the Vienna Convention had been violated by the Commonwealth's failure to inform Breard of his rights under the treaty and to inform the Paraguayan Consulate of Breard's arrest, convictions, and sentences. In addition, the Consul General asserted a parallel claim under Rev. Stat. § 1979, 42 U. S. C. § 1983, alleging a denial of his rights under the Vienna Convention. The District Court concluded that it lacked subject-matter jurisdiction over these suits because Paraguay was not alleging a "continuing violation of federal law" and therefore could not bring its claims within the exception to Eleventh Amendment immunity established in *Ex parte Young*, 209 U. S. 123 (1908). *Republic of Paraguay* v. *Allen*, 949 F. Supp. 1269, 1272–1273 (ED Va. 1996). The Fourth Circuit affirmed on Eleventh Amendment grounds. *Republic of Paraguay* v. *Allen*, 134 F. 3d 622 (1998). Paraguay has also petitioned this Court for a writ of certiorari.

On April 3, 1998, nearly five years after Breard's convictions became final, the Republic of Paraguay instituted proceedings against the United States in the International Court of Justice (ICJ), alleging that the United States violated the Vienna Convention at the time of Breard's arrest. On April 9, the ICJ noted jurisdiction and issued an order requesting that the United States "take all measures at its disposal to ensure that Angel Francisco Breard is not executed pending the final decision in these proceedings . . . ." The ICJ set a briefing schedule for this matter, with oral argument likely to be held this November. Breard then filed a petition for an original writ of habeas corpus and a stay application in this Court in order to "enforce" the ICJ's order. Paraguay filed a motion for leave to file a bill of complaint in this Court, citing this Court's original jurisdiction

over cases "affecting Ambassadors . . . and Consuls." U. S. Const., Art. III, § 2.

It is clear that Breard procedurally defaulted his claim, if any, under the Vienna Convention by failing to raise that claim in the state courts. Nevertheless, in their petitions for certiorari, both Breard and Paraguay contend that Breard's Vienna Convention claim may be heard in federal court because the Convention is the "supreme law of the land" and thus trumps the procedural default doctrine. Pet. for Cert. in No. 97–8214, pp. 15–18; Pet. for Cert. in No. 97–1390, p. 14, n. 8. This argument is plainly incorrect for two reasons.

First, while we should give respectful consideration to the interpretation of an international treaty rendered by an international court with jurisdiction to interpret such, it has been recognized in international law that, absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that State. See *Sun Oil Co.* v. *Wortman*, 486 U. S. 717, 723 (1988); *Volkswagenwerk Aktiengesellschaft* v. *Schlunk*, 486 U. S. 694, 700 (1988); *Société Nationale Industrielle Aérospatiale* v. *United States Dist. Court for Southern Dist. of Iowa*, 482 U. S. 522, 539 (1987). This proposition is embodied in the Vienna Convention itself, which provides that the rights expressed in the Convention "shall be exercised in conformity with the laws and regulations of the receiving State," provided that "said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended." Article 36(2), [1970] 21 U. S. T., at 101. It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. *Wainwright* v. *Sykes*, 433 U. S. 72 (1977). Claims not so raised are considered defaulted. *Ibid.* By not asserting his Vienna Convention claim in state court, Breard failed to exercise his rights under the Vienna Convention

in conformity with the laws of the United States and the Commonwealth of Virginia. Having failed to do so, he cannot raise a claim of violation of those rights now on federal habeas review.

Second, although treaties are recognized by our Constitution as the supreme law of the land, that status is no less true of provisions of the Constitution itself, to which rules of procedural default apply. We have held "that an Act of Congress . . . is on a full parity with a treaty, and that when a statute which is subsequent in time is inconsistent with a treaty, the statute to the extent of conflict renders the treaty null." *Reid* v. *Covert*, 354 U. S. 1, 18 (1957) (plurality opinion); see also *Whitney* v. *Robertson*, 124 U. S. 190, 194 (1888) (holding that if a treaty and a federal statute conflict, "the one last in date will control the other"). The Vienna Convention—which arguably confers on an individual the right to consular assistance following arrest—has continuously been in effect since 1969. But in 1996, before Breard filed his habeas petition raising claims under the Vienna Convention, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA), which provides that a habeas petitioner alleging that he is held in violation of "treaties of the United States" will, as a general rule, not be afforded an evidentiary hearing if he "has failed to develop the factual basis of [the] claim in State court proceedings." 28 U. S. C. §§ 2254(a), (e)(2) (1994 ed., Supp. IV). Breard's ability to obtain relief based on violations of the Vienna Convention is subject to this subsequently enacted rule, just as any claim arising under the United States Constitution would be. This rule prevents Breard from establishing that the violation of his Vienna Convention rights prejudiced him. Without a hearing, Breard cannot establish how the Consul would have advised him, how the advice of his attorneys differed from the advice the Consul could have provided, and what factors he considered in electing to reject the plea bargain that the State offered him. That limitation, Breard also ar-

gues, is not justified because his Vienna Convention claims were so novel that he could not have discovered them any earlier. Assuming that were true, such novel claims would be barred on habeas review under *Teague* v. *Lane,* 489 U. S. 288 (1989).

Even were Breard's Vienna Convention claim properly raised and proved, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial. *Arizona* v. *Fulminante,* 499 U. S. 279 (1991). In this action, no such showing could even arguably be made. Breard decided not to plead guilty and to testify at his own trial contrary to the advice of his attorneys, who were likely far better able to explain the United States legal system to him than any consular official would have been. Breard's asserted prejudice—that had the Vienna Convention been followed, he would have accepted the State's offer to forgo the death penalty in return for a plea of guilty— is far more speculative than the claims of prejudice courts routinely reject in those cases where an inmate alleges that his plea of guilty was infected by attorney error. See, *e. g.,* *Hill* v. *Lockhart,* 474 U. S. 52, 59 (1985).

As for Paraguay's suits (both the original action and the case coming to us on petition for certiorari), neither the text nor the history of the Vienna Convention clearly provides a foreign nation a private right of action in United States courts to set aside a criminal conviction and sentence for violation of consular notification provisions. The Eleventh Amendment provides a separate reason why Paraguay's suit might not succeed. That Amendment's "fundamental principle" that "the States, in the absence of consent, are immune from suits brought against them . . . by a foreign State" was enunciated in *Principality of Monaco* v. *Mississippi,* 292 U. S. 313, 329–330 (1934). Though Paraguay claims that its suit is within an exemption dealing with continuing consequences of past violations of federal rights, see *Milliken* v.

*Bradley,* 433 U. S. 267 (1977), we do not agree. The failure to notify the Paraguayan Consul occurred long ago and has no continuing effect. The causal link present in *Milliken* is absent in this suit.

Insofar as the Consul General seeks to base his claims on § 1983, his suit is not cognizable. Section 1983 provides a cause of action to any "person within the jurisdiction" of the United States for the deprivation "of any rights, privileges, or immunities secured by the Constitution and laws." As an initial matter, it is clear that Paraguay is not authorized to bring suit under § 1983. Paraguay is not a "person" as that term is used in § 1983. See *Moor* v. *County of Alameda,* 411 U. S. 693, 699 (1973); *South Carolina* v. *Katzenbach,* 383 U. S. 301, 323–324 (1966); cf. *Will* v. *Michigan Dept. of State Police,* 491 U. S. 58 (1989). Nor is Paraguay "within the jurisdiction" of the United States. And since the Consul General is acting only in his official capacity, he has no greater ability to proceed under § 1983 than does the country he represents. Any rights that the Consul General might have by virtue of the Vienna Convention exist for the benefit of Paraguay, not for him as an individual.

It is unfortunate that this matter comes before us while proceedings are pending before the ICJ that might have been brought to that court earlier. Nonetheless, this Court must decide questions presented to it on the basis of law. The Executive Branch, on the other hand, in exercising its authority over foreign relations may, and in this case did, utilize diplomatic discussion with Paraguay. Last night the Secretary of State sent a letter to the Governor of Virginia requesting that he stay Breard's execution. If the Governor wishes to wait for the decision of the ICJ, that is his prerogative. But nothing in our existing case law allows us to make that choice for him.

For the foregoing reasons, we deny the petition for an original writ of habeas corpus, the motion for leave to file a

bill of complaint, the petitions for certiorari, and the accompanying stay applications filed by Breard and Paraguay.

Statement of JUSTICE SOUTER.

I agree with the Court that the lack of any reasonably arguable causal connection between the alleged treaty violations and Breard's convictions and sentences disentitle him to relief on any theory offered. Moreover, I have substantial doubts that either Paraguay or any official acting for it is a "person" within the meaning of 42 U. S. C. § 1983 and that the Vienna Convention is enforceable in any judicial proceeding now underway. For these reasons, I believe the stay requests should be denied, with the result that Paraguay's claims will be mooted. Accordingly, I have voted to deny Paraguay's and Breard's respective petitions for certiorari (Nos. 97–1390 and 97–8214), Paraguay's motion for leave to file a bill of complaint (No. 125, Orig.), Breard's application for an original writ of habeas corpus (No. 97–8660), and the associated requests for a stay of execution.

JUSTICE STEVENS, dissenting.

The Court of Appeals' decision denying petitioner Breard's first application for a federal writ of habeas corpus became final on February 18, 1998. Under this Court's Rules, a timely petition for a writ of certiorari to review that decision could have been filed as late as May 19, 1998. See Rule 13.1 ("[A] petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by . . . a United States court of appeals . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment"). Ordinary review of that petition pursuant to our Rules would have given us additional time thereafter to consider its merits in the light of the response filed by the Commonwealth of Virginia. We have, however, been deprived of the normal time for considered deliberation by the Commonwealth's decision to set the date of petitioner's execution for today.

There is no compelling reason for refusing to follow the procedures that we have adopted for the orderly disposition of noncapital cases. Indeed, the international aspects of this case provide an additional reason for adhering to our established Rules and procedures. I would therefore grant the applications for a stay, and I respectfully dissent from the decision to act hastily rather than with the deliberation that is appropriate in a case of this character.

JUSTICE GINSBURG, dissenting in No. 97–8214 (A–732).

I would grant the application for a stay of execution in order to consider in the ordinary course the instant petition, Breard's first federal petition for writ of habeas corpus.

JUSTICE BREYER, dissenting.

In my view, several of the issues raised here are of sufficient difficulty to warrant less speedy consideration. Breard argues, for example, that the novelty of his Vienna Convention claim is sufficient to create "cause" for his having failed to present that claim to the Virginia state courts. Pet. for Cert. in No. 97–8214, pp. 20–22. He might add that the nature of his claim, were we to accept it, is such as to create a "watershed rule of criminal procedure," which might overcome the bar to consideration otherwise posed by *Teague* v. *Lane*, 489 U. S. 288, 311 (1989). He additionally says that what the Solicitor General describes as Virginia's violation of the Convention "prejudiced" him by isolating him at a critical moment from Consular Officials who might have advised him to try to avoid the death penalty by pleading guilty. Pet. for Cert. in No. 97–8214, p. 22; see Brief for United States as *Amicus Curiae* in Nos. 97–1390 and 97–8214, p. 12 ("[T]he Executive Branch has conceded that the Vienna Convention was violated"). I cannot say, without examining the record more fully, that these arguments are *obviously* without merit. Nor am I willing to accept without fuller briefing and consideration the positions taken

by the majority on all of the sometimes difficult issues that the majority addresses.

At the same time, the international aspects of the cases have provided us with the advantage of additional briefing even in the short time available. More time would likely mean additional briefing and argument, perhaps, for example, on the potential relevance of proceedings in an international forum.

Finally, as JUSTICE STEVENS points out, Virginia is now pursuing an execution schedule that leaves less time for argument and for Court consideration than the Court's Rules provide for ordinary cases. Like JUSTICE STEVENS, I can find no special reason here to truncate the period of time that the Court's Rules would otherwise make available.

For these reasons, taken together, I would grant the requested stay of execution and consider the petitions for certiorari in the ordinary course.