169 F.3d 1383
 Maritza C. BELL, Nelson Garcia, Winston Cham, Narciso
Corpas, Rigoberto Gomez, Mario Alberto Rios Guevara, Carlos
Angel Rodgers, Cesar Ramon Viques, Vincente Urriola, Jr.,
Hubert Roy Wilson, Miquel Batista Murillo, Carlos Ernesto
Brenes, Ana del C. de Cano and Monica Cecelia Arcia, Petitioners,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 98-3240.
 United States Court of Appeals,
Federal Circuit.
 March 31, 1999.
 
 Richard J. Hirn, Washington, DC, argued for petitioners. Of counsel on the brief was Ernest Allen Cohen, Tucson, Arizona.
 Robert E. Kirschman, Jr., Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, argued for respondent. With him on the brief were David M. Cohen, Director, and Joseph A. Kijewski, Assistant Director. Of counsel on the brief was Earl A. Sanders, Attorney, Office of the General Counsel, Office of Personnel Management, Washington, DC.
 Before MAYER, Chief Judge, NEWMAN and GAJARSA, Circuit Judges.
 MAYER, Chief Judge.
 
 
 1
 Petitioners Maritza C. Bell et al. appeal the decision of the Merit Systems Protection Board, Bell v. Office of Personnel Management, 79 M.S.P.R. 1 (1998), affirming the final decision of the Office of Personnel Management ("OPM"), that the petitioners were not eligible for coverage under the Civil Service Retirement System of the United States ("CSRS"). Because the board misinterpreted 22 U.S.C. § 3649 (Supp.1998), we reverse and remand.
 
 Background
 
 2
 Petitioners are Panamanian citizens who worked for the Panama Canal Commission ("Commission"). The Commission is the United States agency in charge of running the Panama Canal ("Canal") and was created pursuant to the Panama Canal Treaty, Sept. 7, 1977, U.S.-Panama, 33 U.S.T. 39 ("Treaty"). The Treaty, which became effective on October 1, 1979, transferred sovereignty of the Canal to Panama, but left the United States in charge of its operation until December 31, 1999. See 22 U.S.C. § 3611 (1994); O'Connor v. United States, 479 U.S. 27, 28, 107 S.Ct. 347, 93 L.Ed.2d 206 (1986). The Commission was established as a means to maintain United States control and to allow for increased Panamanian participation in operating the Canal. See O'Connor, 479 U.S. at 28, 107 S.Ct. 347. Prior to the Treaty, the Canal was run by the Panama Canal Company and the Canal Zone Government.
 
 
 3
 Petitioners began working as temporary employees between June 1961 and August 1979 for either the Panama Canal Company or the Canal Zone Government. They continued working at the Canal as temporary employees until their conversion to permanent positions with the Commission during 1980 and 1981. Since October 1, 1979, contributions have been made on their behalf to the Panamanian social security system.
 
 
 4
 Petitioners sought a determination from OPM about their entitlement to an annuity under the CSRS. OPM decided, in a January 13, 1997 final decision, that they were not covered by the CSRS either when they were temporary employees, or when they became permanent employees and wage deductions were made on their behalf to the Panamanian social security system. The board affirmed, holding that the Panama Canal Act, 22 U.S.C. § 3649 (Supp.1998), read in light of the Treaty, excludes application of the CSRS to Panamanian citizens whose initial appointment occurred after October 1, 1979, and who are covered by the Panamanian social security system. Because the petitioners were not covered by the CSRS prior to the effective date of the Treaty, the board ruled that they were excluded from future coverage. Petitioners appeal.
 
 Discussion
 
 5
 All federal employment begins by appointment. See Horner v. Acosta, 803 F.2d 687, 692 (Fed.Cir.1986). The basis for petitioners' claim that they are entitled to an annuity under the CSRS is 22 U.S.C. § 3649 (Supp.1998), which states:
 
 
 6
 [C]hapters 83 and 84 of such Title 5, relating to retirement ... are applicable to Commission employees, except any individual--(1) who is not a citizen of the United States; (2) whose initial appointment by the Commission occurs after October 1, 1979; and (3) who is covered by the Social Security System of the Republic of Panama pursuant to any provision of the Panama Canal Treaty of 1977 and related agreements.
 
 
 7
 At issue here is whether petitioners were "initially appointed" by the Commission before October 1, 1979. "This is an issue of statutory interpretation, over which we exercise plenary review." Ed A. Wilson, Inc. v. General Servs. Admin., 126 F.3d 1406, 1408 (Fed.Cir.1997).
 
 
 8
 Without examining the plain meaning of "initial appointment," the board used the legislative history of section 3649 and the Treaty's implementation agreements to find that CSRS coverage is available only for non-citizen workers that were employed by the Commission and were covered by the CSRS prior to October 1, 1979. Therefore, it limited "initial appointment" to covered--non-temporary--appointments.
 
 
 9
 The first step, which the board appears to have skipped, in interpreting a statute is to examine its plain language. See Ed A. Wilson, 126 F.3d at 1408-09. The meaning of "initial appointment" includes temporary appointments. The regulation permitting the employment of temporary workers at the Canal specifically refers to their "appointment." See 35 C.F.R. § 253.43 (1998). The plain meaning of "initial appointment," therefore, may refer to a temporary employee's initial hiring.
 
 
 10
 This interpretation is buttressed by the federal civil service regulations, which are replete with examples of "initial appointment" referring to non-covered, temporary employees. See, e.g., 5 C.F.R. § 213.104(b)(3)(i) (1998) ("initial appointment" of temporary excepted service employees); id. § 213.3102(x) ("initial appointment" of inmates that may not exceed one year); id. § 304.103(c)(1) (basing reappointment of temporary expert consultants on their "initial appointment"); id. § 316.401(d)(1)(ii) (limiting extensions of temporary appointments based on date of employee's "initial appointment"). Other courts have understood "initial appointment" the same way. See Woods v. Milner, 955 F.2d 436, 438 (6th Cir.1992) ("Appellants do not dispute that at the time of their initial appointments ... they received notice that they were temporary full-time appointees...."); Best v. Stetson, 691 F.2d 42, 43 (1st Cir.1982) ("[Appellant] initially was given a ... temporary appointment in the competitive service. The government says that this initial appointment ....") (emphasis omitted).
 
 
 11
 In lieu of determining its plain meaning, the board looked to section 3649's legislative history. Section 3649 was amended by section 3527 of the National Defense Authorization Act for Fiscal Year 1997, Pub L. No. 104-201, 110 Stat. 2861 (1996), which replaced the original language, merely proscribing application of the CSRS to employees meeting the stated criteria, with language that explicitly applied the CSRS to all employees except those meeting the criteria. The sole legislative history that accompanied the amendment said that it "would amend section 3649 ... to include those sections of the U.S. personnel laws which are specifically applicable to all pre-treaty employees and U.S. citizen, post-treaty employees." H.R.Rep. No. 104-563, at 455 (1996).
 
 
 12
 The board said this legislative history indicates that section 3649 was intended to preclude application of the CSRS to non-citizen employees who were not covered prior to the Treaty's effective date. We do not agree. The House report, consistent with the text of section 3649, states that the CSRS applies to two groups: "all pre-treaty employees and U.S. citizen, post-treaty employees." Id. There is no language that supports the board's attempt to carve out a further exception for non-covered, pre-Treaty employees.
 
 
 13
 The board's citation to the original legislative history of section 3649 is also of no help. The House and Senate reports state that Congress's intent was to exclude coverage for non-citizen employees hired after the Treaty effective date and to continue coverage for those employees covered before that date. See S.Rep. No. 96-255, at 23 (1979); H.R.Rep. No. 96-98, pt. 1, at 52 (1979); H.R.Rep. No. 96-94, pt. 2, at 103-04 (1979). Indeed, the Senate report's version of section 3649 refers to non-citizen employees "initially hired " after October 1, 1979, see S.Rep. No. 96-255, at 23 (emphasis added), thereby contradicting the board's interpretation. Nowhere has Congress suggested that section 3649 was intended to exclude from the CSRS non-covered, pre-Treaty employees.
 
 
 14
 The board's construction of section 3649 also relied on the Treaty's implementation agreements. Even if the board's understanding of the agreements was correct, it erred in using the Treaty in derogation of the statute, because "when a statute which is subsequent in time is inconsistent with a treaty, the statute to the extent of conflict renders the treaty null." Breard v. Greene, 523 U.S. 371, ----, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998) (quoting Reid v. Covert, 354 U.S. 1, 18, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957)). Moreover, as the board noted, the articles of agreement upon which it relied were not ratified by Congress. Nevertheless, the board's interpretation of these agreements was also inaccurate.
 
 
 15
 Article VIII of the Agreement in Implementation of Article III of the Treaty ("Article VIII") states that:
 
 
 16
 1. Concerning Social Security and retirement benefits applicable to employees of the Commission who are not United States citizen employees, the following provisions shall apply:
 
 
 17
 (a) Such persons who are employed by the Commission subsequent to the entry into force of this Agreement shall, as of their date of employment, be covered by the Social Security System of the Republic of Panama.
 
 
 18
 (b) Such persons who were employed prior to the entry into force of this agreement by the Panama Canal Company or Canal Zone Government and who were covered under the Civil Service Retirement System of the United States shall continue to be covered by that system until their retirement or until the termination of their employment with the Commission for any other reason.
 
 
 19
 Panama Canal Treaty: Implementation of Article III, Sept. 7, 1977, 33 U.S.T. 141, 161-62. The board interpreted Article VIII to mean that "only non-citizen employees who were employed by the Company or the Government prior to the implementation of the Treaty on October 1, 1979 and who were covered by the CSRS prior to October 1, 1979, were entitled to continued coverage under the CSRS after that date." Bell, 79 M.S.P.R. at 7 (emphasis added). However, consistent with section 3649, Article VIII refers only to non-citizen employees appointed after the Treaty implementation date and non-citizen employees covered by the CSRS before that date. Article VIII says nothing about non-citizen employees appointed to non-covered positions prior to October 1, 1979.
 
 
 20
 The board also cited Annex C of the Agreement in Implementation of Article IV of the Treaty ("Annex C"), which states in part that "[n]on-United States citizen employees who are not covered by the Civil Service Retirement System of the United States ... shall be covered by Panamanian Social Security from the date this Agreement enters into force...." Panama Canal Treaty: Implementation of Article IV, Sept. 7, 1977, 33 U.S.T. 307, 402. Annex C, however, applies only to "employees of the United States Forces and to those employees who may be transferred from the Panama Canal Commission to the United States Forces." Id. Annex C has no bearing on petitioners' coverage under the CSRS.
 
 
 21
 Section 3649 applies the CSRS to petitioners. So that the board may decide whether they are entitled to benefits under the CSRS, however, we remand.
 
 Conclusion
 
 22
 Accordingly, the decision of the board is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 
 23
 REVERSED AND REMANDED.