No. 03–5781. TORRES *v.* MULLIN, WARDEN. C. A. 10th Cir. Certiorari denied.

Opinion of JUSTICE STEVENS respecting the denial of the petition for certiorari.

My dissent from the hastily crafted opinion in *Breard* v. *Greene,* 523 U. S. 371 (1998) *(per curiam),* rested on procedural grounds: The Court's departure from its normal rules governing the processing of certiorari petitions deprived us of the briefing and argument necessary for the careful consideration of important issues. *Id.,* at 379–380. I am now persuaded that my dissent should have been directed at the merits of the Court's holding.

In *Breard* the Court refused to stay the imminent execution of a citizen of Paraguay. Breard's federal habeas corpus application alleged that the Virginia authorities failed to advise Breard of his right under Article 36 of the Vienna Convention on Consular Relations, Apr. 24, 1963, [1970] 21 U. S. T. 77, 100–101, T. I. A. S. No. 6820 (hereinafter Vienna Convention or Convention), to have the Paraguayan Consulate notified of his arrest and trial. This Court held that Breard procedurally defaulted his claim by failing to raise it in the Virginia state courts. 523 U. S., at 375–376. The opinion did not discuss the possibility that Breard may have failed to assert the treaty claim because he knew nothing about the treaty until after the state proceedings were concluded. It surely is reasonable to presume that most foreign nationals are unaware of the provisions of the Vienna Convention (as are, it seems, many local prosecutors). That is precisely why the

Convention places the notice obligation on the governmental authorities.

There is obvious tension between the holding in *Breard* and the purpose of Article 36 of the Vienna Convention. In its authoritative interpretation of Article 36 in the *LaGrand Case (F. R. G. v. U. S.)*, 2001 I. C. J. No. 104, ¶¶ 90–91 (Judgment of June 27), http://212.153.43.18/icjwww/idocket/igus/igusjudgment/igus_ijudgment_20010625.htm (as visited Oct. 24, 2003, and available in Clerk of Court's case file),* the International Court of Justice (ICJ) explained:

> "The problem arises when the procedural default rule does not allow the detained individual to challenge a conviction and sentence by claiming, in reliance on Article 36, paragraph 1, of the Convention, that the competent national authorities failed to comply with their obligation to provide the requisite consular information 'without delay,' thus preventing the person from seeking and obtaining consular assistance from the sending State.
>
> ". . . Under these circumstances, the procedural default rule had the effect of preventing 'full effect [from being] given to the purposes for which the rights accorded under this article are intended,' and thus violated paragraph 2 of Article 36."

Applying the procedural default rule to Article 36 claims is not only in direct violation of the Vienna Convention, but it is also manifestly unfair. The ICJ's decision in *LaGrand* underscores that a foreign national who is presumptively ignorant of his right to notification should not be deemed to have waived the Article 36 protections simply because he failed to assert that right in a state criminal proceeding.

Article VI, cl. 2, of our Constitution provides that the "Laws of the United States," expressly including "all Treaties made . . . under the Authority of the United States, shall be the supreme Law of the Land." The Court was unfaithful to that command when it held that Congress may not require county employees to check the background of prospective handgun purchasers, *Printz*

---

*The United States has consented to the compulsory jurisdiction of the International Court of Justice over Convention-related disputes. Optional Protocol Concerning the Compulsory Settlement of Disputes, Apr. 24, 1963, Art. I, [1970] 21 U. S. T. 326, T. I. A. S. No. 6820.

v. *United States,* 521 U. S. 898 (1997), that Congress may not exercise its Article I powers to abrogate a State's common-law immunity from suit, *Seminole Tribe of Fla.* v. *Florida,* 517 U. S. 44 (1996), and that a State may not be required to provide its citizens with a remedy for its violation of their federal rights, *Alden* v. *Maine,* 527 U. S. 706 (1999). The Court is equally unfaithful to that command when it permits state courts to disregard the Nation's treaty obligations.

JUSTICE BREYER, dissenting.

Article 36 of the Vienna Convention on Consular Relations (hereinafter Vienna Convention or Convention) requires United States authorities (1) to tell an arrested foreign national, without delay, that he may have his nation's consul informed of the arrest, and (2) to tell the consul about the arrest (if the foreign national so desires). Apr. 24, 1963, Art. 36, ¶ 1(b), [1970] 21 U. S. T. 77, 101, T. I. A. S. No. 6820. This case raises important questions concerning the relation between, on the one hand, the domestic law of the United States, and, on the other, decisions of the International Court of Justice (ICJ) interpreting the Convention. See *LaGrand Case (F. R. G.* v. *U. S.),* 2001 I. C. J. No. 104 (Judgment of June 27) (hereinafter *LaGrand*), http://212.153.43.18/icjwww/ idocket/igus/igusjudgment/igus_ijudgment_20010625.htm (all Internet materials as visited Oct. 24, 2003, and available in Clerk of Court's case file); *Case Concerning Avena and other Mexican Nationals (Mex.* v. *U. S.),* 2003 I. C. J. No. 128 (Order of Feb. 5) (Order in a case, concerning petitioner Osbaldo Torres, scheduled for hearing at the ICJ in December 2003) (hereinafter Provisional Measures Order), http://212.153.43.18/icjwww/idocket/imus/ imusorder/imus_iorder_20030205.PDF.

I

This case arises in the following circumstances: In July 1993, law enforcement authorities in Oklahoma arrested Osbaldo Torres, a Mexican national, and charged him with murder. An Oklahoma court convicted him and sentenced him to death. The Oklahoma Court of Criminal Appeals affirmed his conviction and sentence and denied his various claims for postconviction relief. See *Torres* v. *State,* 962 P. 2d 3 (1998); *Torres* v. *State,* No. PC–98–213 (Okla. Crim. App., Aug. 4, 1998) (unpublished order); *Torres* v. *State,* 58 P. 3d 214 (Okla. Crim. App. 2002).

In 1999, Torres filed a petition for habeas corpus in Federal District Court. He claimed, among other things, that the arresting authorities had failed to notify him of his Vienna Convention rights—and similarly had failed to notify Mexican consular officials of his arrest. The Federal District Court rejected this claim on the grounds that (1) Torres had not raised this claim in his state-court proceedings, thereby procedurally defaulting the claim under state law, and (2) Torres did not show that the Convention violation had prejudiced him. *Torres* v. *Gibson,* No. CIV–99–155–R (WD Okla., Aug. 23, 2000), p. 73 (unpublished memorandum opinion and order); cf. *Breard* v. *Greene,* 523 U. S. 371, 377 (1998) *(per curiam).* The District Court and the Court of Appeals for the Tenth Circuit refused to issue a certificate of appealability. *Torres* v. *Gibson,* No. CIV–99–155–R (WD Okla., Oct. 6, 2000); *Torres* v. *Gibson,* No. 00–6334 (CA10, Apr. 26, 2001) (unpublished order); 317 F. 3d 1145, 1148, n. 1 (CA10 2003) (case below). Torres petitions for certiorari, seeking our review of the Court of Appeals' determination.

Torres argues that the Tenth Circuit's determination conflicts with ICJ decisions, which, he says, authoritatively interpret the Convention. He asks us to grant certiorari in light of the conflict. Mexico has filed an *amicus curiae* brief in support of the petition. Mexico points out that it has brought a case before the ICJ in which it claims, among other things, that the United States, in convicting and sentencing Torres, has violated the Convention, which, in its view, must apply as part of our domestic law. Mexico asks us to defer consideration of this case until the ICJ decides that dispute.

## II

Torres and Mexico are aware that this Court, in *Breard,* 523 U. S., at 375–376, held that the Vienna Convention itself permits both state and federal courts to apply ordinary "procedural default" rules in a case such as this one, thereby effectively barring a defendant from raising in federal court a Convention-violation claim that he failed to assert in the state courts in a timely fashion. The Court also said that a defendant claiming a violation would not likely prevail unless he also showed that "the violation had an effect on the trial." *Id.,* at 377. But, say Torres and Mexico, the ICJ, in its subsequent *LaGrand* decision, interpreted the Convention to the contrary. They add that this later ICJ decision authoritatively interprets the Convention, which in

turn has become part of domestic law, and for that reason binds the Court.

For one thing, Article VI of the Constitution specifies that (along with the Constitution and federal laws) "all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."

For another, lower courts have held that the Convention is self-executing, at least in the sense that its provisions automatically become part of the law of the United States without additional congressional legislation. *E. g., United States* v. *Torres-Del Muro,* 58 F. Supp. 2d 931, 932 (CD Ill. 1999) (noting that "the treaty is 'self-executing' in the sense that there is no need for enabling legislation for the Convention to have the force of law"). Indeed, the United States itself has taken that position. See S. Exec. Rep. No. 91–9, App. p. 5 (1969) (statement of State Department Deputy Legal Adviser J. Edward Lyerly) (testifying at a Senate hearing prior to ratification that the treaty is "entirely self-executive and does not require any implementing or complementing legislation").

Moreover, the ICJ in *LaGrand* held or stated the following: First, the Convention "creates individual rights." And the " 'laws and regulations' " of the United States, including the rules of criminal law and procedure, " 'must enable full effect to be given to the purposes for which' " those " 'rights' " of the arrested foreign national " 'are intended.' " 2001 I. C. J. No. 104, ¶¶ 77, 86–89 (rejecting the United States' arguments to the contrary); Vienna Convention, Art. 36, ¶ 2.

Second, the Convention prohibits the United States from implementing a State's " 'procedural default' rule" if that rule prevents "the detained individual" from challenging "a conviction and sentence by claiming . . . that the competent national authorities failed to comply with their obligation to provide the requisite consular information 'without delay.' " *LaGrand, supra,* ¶ 90. The courts of the United States, in relying upon such a rule in the *LaGrand* case, violated the Convention. ¶¶ 90–91; see also ¶ 60 (stating that the United States may not rely upon defendants' failure to raise their Convention claim until the federal habeas proceeding, "as it was the United States itself which had failed to carry out its obligation under the Convention to inform" them).

Third, it "is immaterial for the purposes of the present case *[i. e., LaGrand]* whether" the defendants, had they been informed

of their Convention rights, "would have sought consular assistance," whether the foreign nation "would have rendered such assistance," or even "whether a different verdict would have been rendered." ¶ 74. Rather, it was "sufficient that the Convention conferred these rights," and that a nation and its nationals "were in effect prevented by the breach of the United States from exercising [these rights], had they so chosen." *Ibid.* In addition, "an apology is not sufficient . . . where foreign nationals have not been advised without delay of their rights . . . and have been . . . sentenced to severe penalties." ¶ 123.

Finally, Article I of the Convention's Optional Protocol Concerning the Compulsory Settlement of Disputes, which the United States has signed, says that "[d]isputes arising out of the interpretation or application of the Convention shall lie within the compulsory jurisdiction of the International Court of Justice." 21 U. S. T., at 326, T. I. A. S. No. 6820.

Torres and Mexico argue (1) that, in light of this last mentioned Protocol, the ICJ's interpretation of the Convention is authoritative, including its determination that the Convention creates "individual rights"; (2) that, since the Convention is self-executing, the ICJ's interpretation is part of the law of the United States; and (3) that, given the ICJ's holdings in *LaGrand,* Torres can enforce his Vienna Convention rights by demanding an appropriate remedy, state-law procedural bars or lack of prejudice notwithstanding.

### III

Torres and Mexico go on to point out that Mexico has asked the ICJ to determine whether the United States has violated the Convention in its treatment of Torres and certain other similarly situated criminal defendants. See *Case Concerning Avena and other Mexican Nationals (Mex. v. U. S.),* 2003 I. C. J. No. 128 (Application of Jan. 9), http://212.153.43.18/icjwww/idocket/imus/imusorder/imus_iapplication_20030109.PDF. They note that the ICJ, in a preliminary order in Mexico's case, wrote that the International "Court, Unanimously, . . . *Indicates* the following provisional measures: *(a)* The United States of America shall take all measures necessary to ensure that . . . Mr. Osvaldo Torres Aguilera *[sic]* [is] not executed pending final judgment in these proceedings." Provisional Measures Order ¶ 59 (emphasis in original). The ICJ held in *LaGrand* that such an order has "binding effect" and "create[s] a legal obligation for

the United States." 2001 I. C. J. No. 104, ¶¶ 109–110. Mexico and Torres contend that, since the Convention is self-executing, it has become part of domestic law and one that, for that reason and for reasons of comity, we should honor. And since Oklahoma might set an execution date within 60 days of our denying certiorari, prior to a final decision by the ICJ, they ask us to defer consideration of Torres' petition.

## IV

On the basis of the briefs so far filed in this case, Torres' and Mexico's arguments seem substantial. Cf. *ante*, p. 1035 (opinion of STEVENS, J.); *Breard*, 523 U. S., at 380–381 (BREYER, J., dissenting). If so, there is a realistic possibility that this is a case we should hear. I note, however, that the United States has not filed a brief directly addressing the issues Torres has raised in this case, nor has any group of individuals expert in the subject of international law. The United States has filed a brief in opposition in the related cases *Ortiz* v. *United States*, No. 02–11188, and *Sinisterra* v. *United States*, No. 03–5286, now pending before the Court [REPORTER's NOTE: See *post*, p. 1073], in which it argues, *inter alia*, that "the ICJ does not exercise any judicial power of the United States, which is vested exclusively by the Constitution in the United States federal courts." Brief in Opposition 18. While this is undeniably correct as a general matter, it fails to address the question whether the ICJ has been granted the authority, by means of treaties to which the United States is a party, to interpret the rights conferred by the Vienna Convention. The answer to Lord Ellenborough's famous rhetorical question, "Can the Island of Tobago pass a law to bind the rights of the whole world?" may well be yes, where the world has conferred such binding authority through treaty. See *Buchanan* v. *Rucker*, 9 East 192, 103 Eng. Rep. 546 (K. B. 1808). It is this kind of authority that Torres and Mexico argue the United States has granted to the ICJ when it comes to interpreting the rights and obligations set forth in the Vienna Convention.

Given the international implications of the issues raised, I believe further information, analysis, and consideration are necessary. Depending on how the ICJ decides Mexico's related case against the United States, and subject to further briefing in light of that decision, I may well vote to grant certiorari in this case. Consequently I would defer consideration of this petition.