United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 16, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 02-21168

DANIEL ANGEL PLATA,

Petitioner-Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
(H-01-CV-2587)
--------------------

Before DAVIS, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant Daniel Angel Plata, a Mexican national
and Texas prisoner #999214, pleaded guilty to capital murder and
was sentenced to death. After exhausting his state remedies, Plata
filed a 28 U.S.C. § 2254 application for a writ of habeas corpus in
federal district court raising several grounds for relief. The
district court granted the State's motion for summary judgment on
all issues, denied Plata's habeas application, and refused to grant
a certificate of appealability (COA) on any issue raised.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Plata now seeks a COA from us on the following issues: (1) whether he is entitled to habeas relief based on the State's failure to advise him of his right to consular assistance under the Vienna Convention on Consular Relations and (2) whether the trial court's refusal to allow evidence of his parole eligibility during sentencing violated his constitutional rights to due process, effective representation by counsel, and freedom from cruel and unusual punishment. His remaining claims have been waived. See Hughes v. Johnson, 191 F.3d 607, 613 (5th Cir. 1999).

A district court shall entertain a § 2254 application filed by "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). In determining whether to issue a COA, we ask whether an applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). When a district court rejects a claim on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Likewise, when a district court finds that a claim is procedurally barred, the applicant must demonstrate that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Id.

When a state court has rejected the applicant's claims on the merits, the district court reviews the claims "through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." Barrientes v. Johnson, 221 F.3d 741, 772 (5th Cir. 2000). Under that scheme, deference to a state court decision is required unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

As a general rule, new constitutional rules of criminal procedure are not applied retroactively to cases that became final before that decision was announced. Teague v. Lane, 489 U.S. 288, 310 (1989). Teague remains applicable after the passage of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Robertson v. Cockrell, 325 F.3d 243, 255 (5th Cir. 2003) (citing Horn v. Banks, 536 U.S. 266, 272 (2002)).

Vienna Convention on Consular Relations (VCCR)

The VCCR is a 79-article, multilateral treaty ratified by the United States in 1969. VCCR, Apr. 24, 1963, 21 U.S.T. 77; see United States v. Jimenez-Nava, 243 F.3d 192, 195 (5th Cir. 2001). Mexico is a signatory nation. See Jimenez-Nava, 243 F.3d at 195. Pursuant to Article 36 of the VCCR, a "receiving State" (here, the United States) shall inform a foreign national who has been

3

arrested or committed to prison or custody pending trial or detained in any other manner of his right to contact the consular post of the "sending State" (here, Mexico). VCCR, art. 36, 21 U.S.T. 77.

The district court determined that (1) Plata had procedurally defaulted his VCCR claim in the state court; (2) alternatively assuming arguendo that his claim was not procedurally defaulted, it was barred by Teague, because recognizing that the VCCR created personally-enforceable rights would create a new rule of law; and (3) even if his VCCR claim had been properly raised and he had a personally-enforceable right under the VCCR, the state court's rulings —— that Plata needed to show prejudice from the VCCR violation and that he failed to show such prejudice —— were not contrary to or an unreasonable application of clearly established law under § 2254(d)(1).

Plata argues in his COA application that the district court's denial of his VCCR claim ignored the International Court of Justice's (ICJ) interpretation of Article 36 of the VCCR in the LaGrand Case (F.R.G. v. U.S.), 2001 I.C.J. Rep. 104 (Judgment of June 27, 2001). Plata did not present the LaGrand case or any argument stemming from that opinion to the district court, so we need not consider it. See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003). Regardless, because his COA application fails to address the district court's finding that his VCCR claim is Teague-barred, he has not shown that the district court's denial of his

4

VCCR claim is debatable. See Hughes, 191 F.3d at 613; Price v. Roark, 256 F.3d 364, 368 n.2 (5th Cir. 2001). We therefore deny COA with respect to Plata's VCCR claim.

Furthermore, even if we were to address the Teague arguments raised in Plata's reply brief, he has not shown that the district court's denial of his VCCR claim as Teague-barred is debatable. See Breard v. Greene, 523 U.S. 371, 377 (1998); Flores v. Johnson, 210 F.3d 456, 456-57 (5th Cir. 2000). In addition, even if Plata's VCCR claim were not procedurally defaulted and even if it were not barred by Teague, he still would have to show that the VCCR violation had some effect on his trial. See Breard, 523 U.S. at 377; Avena and other Mexican Nationals (Mexico v. United States), 2004 I.C.J. Rep. ___, ¶ 121. Plata asserts that he was prejudiced by the lack of consular assistance because he did not understand why, under the Texas legal system, it would have benefitted him to plead guilty, and because the consul would have litigated the inequality of the prosecution's grant of favorable plea deals to his co-conspirators. He insists that consular assistance would have aided him in finding medical documents to show that he was injured at birth and that he was physically abused by his father while he lived in Mexico; that the consul could have obtained Plata's educational records from Mexico; and that the consul could have traveled to Mexico and conducted interviews with his relatives there, which in turn could have assisted the defense in confirming

5

the diagnosis suggested by Plata's MMPI scores, i.e., that he suffered from schizophrenia.

Plata's argument regarding prejudice suffered at trial because he did not understand the benefit of pleading guilty before trial does not make the district court's denial of his VCCR claim debatable, as trial counsel's affidavit in the state habeas proceedings stated the he explained to Plata the consequences of pleading guilty before trial and after the State presented its case. Further, Plata's argument that he was discriminated against because the one of his co-conspirators who told him to fire the fourth, fifth, and sixth shots at the victim received only a life sentence does not make debatable the district court's finding that Plata's death sentence was most likely the result of his being the gunman during the offense.

Although he argues that the Mexican consul could have obtained medical records to show that Plata suffered from oxygen deprivation at birth and that he was physically abused as a child, and despite the fact that he now has legal assistance from Mexican consul, Plata does not provide any evidence to support these claims. Regardless, his mother testified that Plata was "born dead," that he needed to be revived by doctors after his birth, and that she and Plata were physically abused by Plata's father. Plata also testified that he was physically abused by his father. Given the cumulative nature of any records regarding Plata's birth and physical abuse, Plata has not shown that the district court's

6

alternative denial of his VCCR claim on prejudice grounds is debatable.

Plata also contends that the prosecution argued to the jury that there were no records to support Plata's physical abuse claims, and that the absence of such records therefore prejudiced him at sentencing. Again, however, as he has not provided any records to support this claim, his assertion regarding those records is speculative and, thus, does not render the district court's denial of Plata's VCCR claim debatable. Neither does Plata explain what his educational records from Mexico would have shown that would have mitigated his sentence. Plata moved from Mexico to the United States when he was eleven years old.

Finally, Plata's assertion that Mexican consul would have traveled to Mexico and interviewed relatives, which could have assisted the defense in confirming the diagnosis of schizophrenia suggested by the scores on his personality test, is raised for the first time in his COA application and therefore will not be considered. See Roberts, 319 F.3d at 694. Moreover, the claim is purely speculative, as Plata has provided us no indication that there is any evidence in Mexico that would support such a diagnosis. Neither is there any indication that the Mexican consul would have been more likely than trial counsel to investigate whether Plata is schizophrenic, given trial counsel's statement in his affidavit that there was no indication that Plata was suffering from any mental health problem or mental retardation; that Plata

7

was lucid and conversant during their meetings; that counsel had numerous conversations with Plata concerning mitigating evidence for sentencing; that counsel interviewed numerous family members; and that counsel would have checked out other witnesses if Plata had told him about them. Accordingly, even if Plata's claim were properly raised and before this court, we would conclude that Plata has failed to show that the district court's alternative denial of his VCCR claim on prejudice grounds is debatable among reasonable jurists. See Miller-El, 537 U.S. at 336.

Parole Eligibility

Due Process

Relying on state cases construing the Supreme Court's decision in Simmons v. North Carolina, 512 U.S. 154 (1994), the state court, on both direct and habeas review, rejected Plata's claim that he had a due process right to have the jury informed that he would not be eligible for parole for 40 years. The district court noted that, in Simmons, 512 U.S. at 169, the Supreme Court held that a capital defendant who could be sentenced to life *without parole*, as an alternative to a death sentence, should be allowed to inform the jury of their parole ineligibility; that the Supreme Court, in Ramdass v. Angelone, 530 U.S. 156, 166 (2000), declined to extend that rule to prisoners who, like Plata, would ultimately be eligible for parole; and that this court, in Tigner v. Cockrell, 264 F.3d 521, 525 (5th Cir. 2001), held that extending the rule of

8

<u>Simmons</u> to prisoners who were eligible for parole would be barred by <u>Teague</u>. The district court determined that the state court's decisions were not contrary to or an unreasonable application of clearly established law. <u>See</u> 28 U.S.C. § 2254(d)(1).

In <u>Simmons</u>, 512 U.S. at 157, the prosecution had raised the issue of the capital defendant's future dangerousness to the jury. A plurality of the Court concluded that, by refusing to inform the jury of Simmons's parole ineligibility, the State had deprived him of his due process rights under the Fourteenth Amendment. <u>Id.</u> at 171. In <u>O'Dell v. Netherland</u>, 521 U.S. 151, 159-66 (1997), the Court determined that the holding in <u>Simmons</u> was a "new" rule within the meaning of <u>Teague</u>. <u>See</u> <u>also</u> <u>Ramdass v. Angelone</u>, 530 U.S. 156, 169-70 (2000). In the same vein, we have repeatedly held that any extension of the scope of <u>Simmons</u> is barred by <u>Teague</u>. <u>See</u> <u>e.g.</u>, <u>Tigner v. Cockrell</u>, 264 F.3d 521, 525 (5th Cir. 2001).

Plata nevertheless insists that his claim is now supported by the Supreme Court's decision in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002). <u>Ring</u> held, however, that due process is violated when a judge rather than a jury finds the presence of aggravating circumstances that are necessary for the imposition of a capital sentence. <u>Ring</u>, 536 U.S. at 609. It did not state that a capital defendant's parole eligibility was required by due process to be presented to the jury, and it did not address whether, as determined by the district court, any extension of <u>Simmons</u> is barred by <u>Teague</u>. As Plata has failed to show that the district

9

court's denial of his due process claim is debatable based on Ring, COA is DENIED with respect to this claim.

### Right to Effective Legal Representation

Plata urges that State action denied his right to effective representation under the Sixth Amendment because Texas law precluded him from informing the jury that he would not be eligible for parole for 40 years.[1]  As he fails to challenge the district court's determinations that his counsel was not ineffective under Strickland v. Washington, 466 U.S. 668 (1984), and that any extension of Simmons to the Sixth Amendment context would be barred by Teague, see Hughes, 191 F.3d at 613, we deny COA with respect to this claim.

### Cruel and Unusual Punishment

Plata argues that, based upon Skipper v. South Carolina, 476 U.S. 1 (1986), and Jurek v. Texas, 428 U.S. 262 (1976), the trial court violated his Eighth Amendment rights because punishment was imposed without his being allowed to introduce evidence that he would not be eligible for parole for 40 years.  The Texas Court of Criminal Appeals rejected this claim on both direct and habeas review.  The district court determined that Plata had failed to show that the state court decisions were contrary to or an

---

[1]    When Plata was convicted, the sentencing jury's consideration of parole eligibility in capital cases was expressly forbidden by Texas law.  See TEX. CODE CRIM. PROC. ANN. ART. 37.07, § 4(a) (West 1998).  Texas law was amended in 1999 to allow for evidence of parole eligibility in all capital cases. See TEX. CODE CRIM. PROC. ANN. ART. 37.071(e)(2)(b) (West 2000).

10

unreasonable application of federal law. See 28 U.S.C. § 2254(d)(1).

In Skipper and Jurek, the Supreme Court held that precluding a defendant from introducing relevant mitigating evidence during a sentencing proceeding violates the Eighth Amendment. Skipper, 476 U.S. at 4; Jurek, 428 U.S. at 271. The Simmons Court relied on Skipper to find that the due process clause requires a jury to be told of a capital defendant's parole ineligibility, but the Court expressly declined to address whether its result was also compelled by the Eighth Amendment. Simmons, 512 U.S. at 162 n.4, 164-65. As Plata has failed to show that the district court's denial of his parole eligibility claims is debatable among reasonable jurists, we deny COA with respect to this claim. See Miller-El, 537 U.S. at 336.

COA DENIED.

I:\AIMS\FORMS\02\02-21168\4916172\02-21168.0.wpd
8/16/04  11:27 am