J-S62010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER FRED MBEWE, | |
| Appellant | No. 93 WDA 2015 |

Appeal from the PCRA Order December 18, 2014
in the Court of Common Pleas of Allegheny County
Criminal Division at No.: CP-02-CR-0000592-2006

BEFORE:  GANTMAN, P.J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 16, 2015**

Appellant, Christopher Fred Mbewe, appeals from the order denying, after a hearing, his counseled first petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546.  Appellant claims after-discovered evidence, and the ineffective assistance of counsel.  We affirm.

On July 15, 2009, a jury convicted Appellant of first degree murder for the shooting death of Carol Tollan, his mother-in-law, on December 15, 2005.  This Court affirmed the judgment of sentence.  (**_See Commonwealth v. Mbewe_**, 37 A.3d 1246 (Pa. Super. 2011) (unpublished

_____

[*] Retired Senior Judge assigned to the Superior Court.

memorandum)). Our Supreme Court denied allowance of appeal on October 5, 2012. (*See Commonwealth v. Mbewe*, 54 A.3d 348 (Pa. 2012)).

On November 27, 2012, Appellant timely filed a *pro-se* petition for PCRA relief. The court appointed counsel, who filed two amended petitions.

Appellant claimed "after-discovered evidence" in the form of purported alibi testimony from his sister, Margaret Kasuba, and from his mother, Hilda Mbewe. He asserts that Ms. Kasuba is now ready to testify that she was in telephone contact with him around the time of the murder. Appellant further maintains that the preliminary hearing testimony of his mother, if entered at trial, would have confirmed that after his telephone conversation with her, she gave him a ride to pick up his daughter from a head start program.[1]

His sister was apparently present at trial but did not testify, allegedly for fear that she would be deported. She now offers an affidavit of her proposed testimony. His mother, Hilda Mbewe, did testify at his preliminary hearing, and was cross-examined. (*See* N.T. Preliminary Hearing, 1/13/06, at 38-43). By the time of trial she had been deported, after her visitor's visa had expired. Appellant maintains that his sister is now willing to testify and

_____

[1] Independent testimony established that the victim was alive at noon, and discovered dead at 12:15 p.m. (*See* Trial Court Opinion, 6/03/15, at 11).

that trial counsel should have presented his mother's testimony from the preliminary hearing at trial. (**See** Appellant's Brief, at 15, 21).

Further, Appellant claims that trial counsel was ineffective for not informing him of his rights to assistance from the Zambian consulate, under the Vienna Convention.[2] (**See id.** at 5). Appellant testified that he is a citizen of Zambia. (**See** N.T. PCRA Hearing, 12/17/14, at 39).

Finally, Appellant claimed trial counsel was ineffective for not producing telephone records of his call to the Public Defender's Office on the morning after his first interview by the police. He maintains, in effect, that the phone record would have supported his claim that the police violated his right to counsel under **Miranda v. Arizona**.[3]

The PCRA court denied relief, after a hearing, on December 18, 2014. This timely appeal followed.[4]

Appellant presents four questions for our review:

> I. Did the PCRA court err in denying Appellant's request for a new trial where a previously unavailable alibi witness is now willing and able to testify on Appellant's behalf to provide

---

[2] More precisely, Appellant's claim refers to the Vienna Convention on Consular Relations & Optional Protocol on Disputes, April 24, 1963, TIAS (United States Treaties and Other International Agreements), No. 6820 (Dec. 14, 1969).

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[4] Appellant filed a timely statement of errors on February 17, 2015. The PCRA court filed an opinion on June 3, 2015. **See** Pa.R.A.P 1925.

testimony in support of Appellant's alibi for the time of the murder?

II. Did the PCRA court err in denying Appellant's request for a new trial where trial counsel provided ineffective assistance of counsel by failing to obtain and review the transcript of Appellant's preliminary hearing and introduce at Appellant's trial the preliminary hearing transcript of the testimony of an unavailable witness, Hilda Mbewe, which would have provided Appellant with an alibi for the time of the murder?

III. Did the PCRA court err in denying Appellant's request for a new trial where Appellant was prejudiced by the violation of his rights under the Vienna Convention and trial counsel and appellate counsel provided ineffective assistance of counsel by failing to preserve and/or raise this issue before, during or after trial, or on appeal?

IV. Did the PCRA court err in denying Appellant's request for a new trial where trial counsel provided ineffective assistance of counsel by failing to investigate and introduce Appellant's phone records at his suppression hearing to support Appellant's testimony that he was denied his right to counsel when he was repeatedly questioned by investigating police officers?

(Appellant's Brief, at 5).

[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citations omitted).

Here, in his first issue, Appellant claims that the current willingness of his sister to present "alibi" evidence constitutes after-discovered facts requiring a new trial. (*See* Appellant's Brief, at 15-18). He maintains that the PCRA court erred in not granting him a new trial. We disagree.

In pertinent part, the PCRA provides for relief if a petitioner pleads and proves by a preponderance of the evidence that his conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi).

> After-discovered evidence can be the basis for a new trial if it: 1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; 2) is not merely corroborative or cumulative; 3) will not be used solely to impeach the credibility of a witness; and 4) is of such nature and character that a different verdict will likely result if a new trial is granted.

***Commonwealth v. McCracken***, 659 A.2d 541, 545 (Pa. 1995) (quoting ***Commonwealth v. Wilson***, 649 A.2d 435, 448 (Pa. 1994)).

Our Supreme Court has defined alibi as "a defense that places the defendant at the relevant time in **a different place than the scene involved** and so **removed** therefrom as to render it **impossible** for him to be the guilty party." ***Commonwealth v. Kolenda***, 676 A.2d 1187, 1190 (Pa. 1996) (citations omitted) (emphases added)).

Here, Appellant's first claim fails to meet any of the PCRA requirements. The purported evidence was not unavailable at the time of trial. To the contrary, Appellant concededly knew at the time of trial that he had been in telephone conversations with his mother and his sister. (**See** Second Amended [PCRA] Petition, 7/08/14, at 6). Indeed, he would have

known all along, because his testimony is that he was a participant in the cell phone conversations.

Next, the purported alibi testimony was not exculpatory. Telephone conversations **after** the murder, particularly cell phone conversations, do not refute Appellant's presence at the crime scene at the time of the murder, as Appellant suggests. (**See** Appellant's Brief, at 22).

Additionally, Appellant knew of his sister's projected testimony at the time of trial. He concedes that his sister "**refused**" to testify at trial because of her fear of deportation, after her visa had expired. (Appellant's Brief, at 16) (emphasis added). Appellant offers no pertinent authority whatsoever in support of his claim that the **refusal** to testify for personal reasons (absent invocation of Fifth Amendment rights) constitutes "unavailability" for PCRA purposes. Controlling caselaw contradicts Appellant's legal premise.

> For [ ] testimony to be considered previously "unavailable," however, the witness must have actually invoked his right to remain silent; if the witness simply refused to testify or the defendant did not question the witness about the incriminating topic, then the defendant cannot claim a witness' later self-incriminating statement is "after-discovered." **See Stanley v. Shannon**, 2007 WL 2345284, *4 n.6 (E.D. Pa. Aug. 16, 2007) (observing witness in [**Commonwealth v.**] **Fiore**[, 780 A.2d 704 (Pa. Super. 2001)] was unavailable to testify at trial because he had invoked his Fifth Amendment right not to testify; therefore, witness' testimony in **Fiore** constituted after-discovered evidence; but testimony of witness who simply refuses or is unwilling to testify does not constitute after-discovered evidence).

**Commonwealth v. Padillas**, 997 A.2d 356, 363 (Pa. Super. 2010).

- 6 -

Finally, Appellant fails to prove his assertion that if his sister's testimony were now admitted, it "would have provided the jury with reasonable doubt" such that he would be acquitted. (Appellant's Brief, at 17). Appellant now claims the evidence against him was sparse and circumstantial. (*See id.*). This bald assertion is speculative and unsupported.[5]

To the contrary, the weight to be accorded Ms. Kasuba's testimony would have been for the jury as fact finder. **See Commonwealth v. Housman**, 986 A.2d 822, 831 (Pa. 2009), *cert. denied*, 562 U.S. 881 (2010) (noting that "trier of fact is free to believe all, part, or none of the evidence. . . .") (citation omitted). And it is beyond dispute that circumstantial evidence is sufficient for conviction. **See id.** ("In evaluating whether the evidence is sufficient to support the conviction, the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered[.]") (citation and internal quotation marks omitted).

_____

[5] In the interest of brevity, we decline to review in detail Appellant's representations to the police that he was having an affair with his mother-in-law, or that she was last seen not with him, but with a friend of his from Africa named Ben Adams, whose existence could not be confirmed by the police.

Moreover, Appellant ignores significant inconsistencies in the statements he gave to the police, often voluntarily and at his initiative, including his steadfast (six time) denial that he owned a camouflage jacket (which witnesses-including his mother-saw him wear on the day of the murder). (**See** Trial Ct. Op., at 6). Afterward, he gave the police a camouflage jacket, despite the numerous prior denials. The police later determined that Appellant had purchased the jacket at a thrift store fourteen days **after** the murder.[6]

"[T]he Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, we may not substitute our judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed." **Commonwealth v. Brewer**, 876 A.2d 1029, 1032 (Pa. Super. 2005), *appeal denied*, 887 A.2d 1239 (Pa. 2005) (citations and internal quotation marks omitted). Any doubt about the defendant's guilt is to be resolved by the factfinder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the

_____

[6] It was later determined by the police that the army camouflage jacket handed over by Appellant, which bore the name "McConagy," had been donated to a thrift store by Gary McConagy, formerly in the Army Reserves, and later an agent with Homeland Security. A receipt confirmed that Appellant purchased McConagy's jacket at the thrift store on December 29, 200[5], **fourteen days after the murder**. (**See** Trial Ct. Op., at 7). (The trial court's reference to December 29, 200**6** is an apparent typographical error).

combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001), *appeal denied*, 806 A.2d 858 (Pa. 2002).

The claim of a different result because of testimony from his sister and mother is sheer unsupported speculation. *See Commonwealth v. Padillas*, 997 A.2d 356, 367 (Pa. Super. 2010), *appeal denied*, 14 A.3d 826 (Pa. 2010) (rejecting assertion that outcome would have been different based on defendant's brother's confession, noting close sibling relationship gave brother strong reason to fabricate confession exculpating defendant). Appellant's first claim does not merit relief.

Appellant's second, third, and fourth questions challenge the effectiveness of counsel.

> To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner. *See Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

*Commonwealth v. Freeland*, 106 A.3d 768, 775 (Pa. Super. 2014) (citing *Spotz*, *supra* at 303 n.3).

Furthermore,

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate

that counsel's performance was deficient and that such deficiency prejudiced him.

*Spotz*, *supra* at 311 (case citations, internal quotation marks and other punctuation omitted). Under the *Pierce* prejudice standard, to overcome the presumption of effectiveness a petitioner must show that counsel's conduct had an **actual adverse effect** on the outcome of the proceedings. *See id.* at 315. Furthermore,

> "Counsel's assistance is **deemed constitutionally effective** once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test." *Commonwealth v. Rolan*, 964 A.2d 398, 406 (Pa. Super. 2008) (citations and internal quotation marks omitted) (emphasis in original).

*Freeland*, *supra* at 775. "As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error." *Spotz*, *supra* at 315 (citation omitted).

Here, preliminarily, we note that except for repeated conclusory insistence on prejudice, Appellant fails generally to establish ineffectiveness by application of the three-prong *Pierce* standard to the facts of this case. On that basis alone all three of Appellant's ineffectiveness claims fail. *See Freeland*, *supra* at 775. Nevertheless, in the interest of judicial economy, we will review Appellant's issues on the merits as well as waiver.

In Appellant's second question, he asserts counsel was ineffective for not introducing the preliminary hearing testimony of his mother at the trial.

(**See** Appellant's Brief, at 5). However, Appellant fails to establish that this testimony would have provided an alibi for the time the murder was committed, a half hour earlier than the initial phone conversation with her. (**See id.** at 18-22).

An alibi is "a defense that places the defendant at the relevant time in **a different place than the scene involved** and so **removed** therefrom as to render it **impossible** for him to be the guilty party." **Kolenda**, **supra** at 1190 (citations omitted) (emphases added)). Here, Hilda Mbewe's testimony about a telephone conversation over a cellphone at 12:40 p.m. would not have precluded Appellant's commission of the murder a half hour or more earlier (between noon and 12:15). Moreover, her testimony about her son's wearing a camouflage jacket on the day of the murder (which he repeatedly denied), would not have been helpful to him.

Appellant fails to show that the outcome would have been different if his mother's testimony had been presented at trial. He fails to show counsel was ineffective. Appellant's second issue does not merit relief.

In his third issue Appellant claims trial counsel was ineffective for not invoking his rights under the Vienna Convention.[7, 8] (**See** Appellant's Brief,

_____

[7] This Court has previously explained:

> The Vienna Convention is a 79 article, multilateral treaty to which approximately 160 countries, including the United States . . . are signatories. The treaty was negotiated in 1963 and

*(Footnote Continued Next Page)*

- 11 -

*(Footnote Continued)* _____

ratified by the United States in 1969. ***U.S. v. Lombera-Camorlinga****,* 206 F.3d 882 (9th Cir. 2000). As a ratified treaty, the Vienna Convention has the status of federal law. "[T]reaties are recognized by our Constitution as the supreme law of the land." ***Breard v. Greene****,* 523 U.S. 371, 118 S. Ct. 1352, 140 L. Ed. 2d 529 (1998). U.S. Constitution, Article VI, clause 2 (all treaties shall be supreme law of the land).

Article 36(1)(b) of the Convention provides:

**[I]f he so requests***,* the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State, if within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authority without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph:

21 U.S.T. 77, 101 (emphasis added). Article 36(1)(c) gives consular officers the right to visit and correspond with the detained foreign national and to arrange for the foreign national's legal representation. ***Id.*** In a number of instances, bilateral agreements direct that " 'mandatory notification' must be made to the nearest consulate or embassy 'without delay,' 'immediately,' or within the time specified in a bilateral agreement between the United States and a foreign national's country, regardless of whether the foreign national requests such notification." U.S. Depart. of State, *Consular Notification and Access* 14 (1998). . . .

"Treaties do not generally create rights that are privately enforceable in the federal courts." ***United States v. Li****,* 206 F.3d 56, 60 (1st Cir. 2000) (whether or not Vienna Convention creates individual rights, suppression of evidence or dismissal of indictment not appropriate remedies). In regard to the Vienna Convention, the U.S. Supreme Court has found that "neither the text nor the history of the Vienna Convention clearly provides a

*(Footnote Continued Next Page)*

at 23-26). He also claims that both trial and appellate counsel were ineffective for failing to raise and preserve the claim. (*See id.* at 24). Appellant's claim does not merit relief.

"The claims that Appellant raises in this issue focus on his individual rights under the Vienna Convention. Addressing such claims involves interpretation of the treaty, a question of law, for which our standard of review is *de novo* and our scope is plenary." *Commonwealth v. Padilla*, 80 A.3d 1238, 1259 (Pa. 2013), *cert. denied*, 134 S. Ct. 2725 (2014) (citation omitted).

_____

*(Footnote Continued)* _____

. . . right of action in United States' courts to set aside a criminal conviction and sentence for violation of consular notification provisions." *Breard v. Greene,* 523 U.S. 371, 118 S. Ct. 1352, 140 L.Ed.2d 529 (1998); *U.S. v. Ademaj,* 170 F.3d 58 (1st Cir. 1999) (Vienna Convention prescribes no judicial remedy or other recourse for its violation); *Murphy v. Netherland,* 116 F.3d 97 (4th Cir. 1997) (Vienna Convention sets out rights between signatory nations and does not create rights under U.S. Constitution); *U.S. v. Lombera-Camorlinga,* 206 F.3d 882 (9th Cir. 2000) (violation of Vienna Convention does not require suppression of subsequently obtained evidence).

*Commonwealth v. Quaranibal*, 763 A.2d 941, 943-44 (Pa. Super. 2000).

[8] For the sake of completeness, we note that Robert L. Foreman, Esq., who represented Appellant after the preliminary hearing but prior to trial, testified at the PCRA hearing that he **did** contact the Zambian consulate, seeking assistance for Appellant. (*See* N.T. PCRA Hearing, 12/17/14, at 54-55). The result was apparently inconclusive. (*See id.* at 55). Counsel did not follow up. (*See id.* at 56). We find no mention of this testimony in the trial court's opinion, or in either brief.

- 13 -

There is a substantial body of caselaw which holds, in effect, that the Vienna Convention does not create a privately enforceable body of rights for individual defendants. (**See** n.7 **supra**; **see also** Commonwealth's Brief, at 24 n.4 (citing cases)).

However, we need not reach or resolve that issue to decide Appellant's third question. Appellant fails to prove prejudice. Therefore, even if we were to assume for the sake of argument that Appellant had an otherwise viable claim under Article 36 of the Vienna Convention on Consular Relations, his ineffectiveness claims under the PCRA would fail. **See Freeland**, **supra** at 775.

Additionally, to overcome the presumption of effectiveness Appellant had the burden to demonstrate by a preponderance of the evidence that any omission under the Convention "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii); **see also Spotz**, **supra** at 311. He fails to do so.

To the contrary, Appellant concedes that he speaks and understands English and has resided in the United States "for several years." (Appellant's Brief, at 25). At the PCRA hearing, Appellant testified that he had been living in the United States since 1999. (**See** N.T. PCRA Hearing, 12/17/14, at 48). Nevertheless, he speculates that without Zambian consular assistance he may have missed ("lost") nuances of the English

language and American culture, preventing full participation in his defense "and in the integral decision-making required of a murder trial[.]" (**See** Appellant's Brief, at 25-26).

To prove prejudice, Appellant had the burden to show an "**actual adverse effect**" on the outcome of the proceedings. **Spotz, supra** at 315 (emphasis added). Notably, Appellant does not dispute that he was represented by counsel at every critical stage of his criminal proceedings. Nebulous speculation on the loss of nuance does not prove actual, adverse effect. **See Padilla**, **supra** at 1263 (concluding general assertion of prejudice from deprivation of consular assistance was, *inter alia*, speculative and meritless). Appellant fails to prove prejudice. His third claim does not merit relief.

Finally, in Appellant's fourth claim, he alleges that counsel's failure to investigate and introduce phone records at his suppression hearing constituted ineffective assistance of counsel. (**See** Appellant's Brief, at 5). He maintains that the phone records would have supported his claim that the police deprived him of this right to counsel. (**See id.** at 27-31). Appellant's issue is waived, and would not merit relief.

Preliminarily, we note that even though Appellant's argument alludes to various aspects of the suppression hearing, he has not ensured that the certified record included the transcript of that hearing. Therefore, all claims dependent on reference to the suppression hearing are waived. **See**

*Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006), *appeal denied*, 916 A.2d 632 (Pa. 2007) ("In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted.").

Moreover, on the available record, Appellant's claim would not merit relief. Even if properly established, the mere existence of a record of a telephone call to the Public Defender's Office, without more, does not show an attorney-client relationship, or the attempt to obtain one. Much less does it show that Appellant attempted to invoke *Miranda* rights with the police. Quite simply, it proves nothing other than a phone call.

Although we do not have the transcript of the suppression hearing, at the PCRA hearing Appellant testified that, at the suppression hearing, he had raised a claim that he was denied his right to counsel during police interrogation. (*See* N.T. PCRA Hearing, 12/17/14, at 33-35). At the same PCRA Hearing, Detective James McGee testified that, at the suppression hearing, he had testified that Appellant understood his *Miranda* rights, and that he (Detective McGee) had never denied Appellant an attorney. (*See id.* at 57-61). Appellant candidly concedes that at the end of the hearing, the PCRA court credited the testimony of Detective McGee, and did not credit his own testimony. (*See* Appellant's Brief, at 29). We defer to the credibility determinations of the PCRA court.

Accordingly, Appellant has failed to prove that he was deprived of his *Miranda* rights. Records of a telephone call to the Public Defender's Office, without more, would fail to support his claim that the police did not advise him of his *Miranda* rights. Counsel cannot be ineffective for failure to raise a meritless claim. Appellant was not prejudiced. His fourth claim lacks merit.

None of Appellant's claims merit relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2015