**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 809 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | May 30, 2023, in the Court of |
| | : | Common Pleas of Bucks County, |
| v. | : | Criminal Division, at No. CP-09-CR- |
| | : | 0000746-1988 |
| | : | |
| RICHARD ROLAND LAIRD, | : | SUBMITTED: September 18, 2024 |
| | : | |
| Appellant | : | |

**OPINION**

**JUSTICE DONOHUE**                                        **FILED: February 19, 2025**

Appellant, Richard Roland Laird ("Laird"), was sentenced to death in 2007 following his retrial for first-degree murder after having originally been convicted and sentenced to death in 1988 for the same offense. In this appeal, Laird challenges the PCRA[1] court's decision to deny as untimely his most-recently filed PCRA petition.[2] Without invoking a statutory exception, Laird asks this Court to create an equitable exception to that time-bar by applying our decision in *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021), to petitioners who raise claims concerning the ineffective assistance of PCRA counsel for the first time in an untimely PCRA petition, if and when the untimely

---

[1] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

[2] 42 Pa.C.S. § 9545(b)(1) (providing that any PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless the petitioner pleads and proves one of three enumerated exceptions).

petition presents the first opportunity for the petitioner to do so. He also asserts that Article 7 of the International Covenant on Civil and Political Rights ("ICCPR") precluded dismissal of his petition as untimely.

We hold today that *Bradley* did not establish an equitable exception to the PCRA's time-bar and that its rationale cannot be extended to create one. Furthermore, we hold that the ICCPR cannot be invoked to circumvent the PCRA's timeliness requirements and reaffirm that exceptions to the PCRA's time-bar are strictly limited to those set forth in Section 9545(b)(1) of the PCRA.[3] Accordingly, we affirm the PCRA court's order denying Laird's PCRA petition as untimely.

## Background

On the evening of December 14, 1987, victim Anthony Milano went to the Edgely Inn in Bucks County where Laird and Frank Chester, Laird's co-defendant, had already

---

[3] Section 9545 provides that PCRA petitions must be filed within one year of the date the judgment becomes final

> unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i-iii). Petitions invoking one of these exceptions "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S § 9545(b)(2).

been drinking for some time. *Commonwealth v. Laird/Chester*, 587 A.2d 1367, 1371 (Pa. 1991) ("*Laird I*").[4] Milano arrived in his mother's 1976 Chevy Nova at approximately 11:15 p.m. and departed with Laird and Chester after the tavern closed a few hours later. One witness testified that Laird and Chester "were taunting Milano as to his masculinity" before the trio departed. *Id*.

Milano's mother reported him missing later that morning when he failed to return home. The following evening, police discovered the 1976 Chevy Nova that had been deliberately set ablaze while parked near a wooded area. A search of the surroundings yielded Milano's severely battered and bloodied body.[5]

The subsequent investigation revealed that at approximately 4:00 a.m. on December 15, 1987, Laird and Chester arrived at the apartment of their friend located less than a mile from the murder scene. The friend testified that the pair were agitated, covered in blood, and admitted to him that they had just fought a man who died during the confrontation. Laird and Chester then went to Laird's apartment where they attempted

---

[4] Laird and Chester's direct appeals were consolidated following their joint trial.

[5] As this Court summarized during the direct appeal from Laird's conviction:

> A postmortem examination revealed that [Milano] had been assaulted about the face and had sustained lacerations about the face, throat, neck, and shoulder. The pathologist concluded that [he] had been kicked and/or punched in both the right and left temple areas and the chin. A hairline fracture at the base of the skull was attributed to a blunt instrument striking the head. The lacerations were made by a sharp instrument, consistent with a utility knife. The pathologist opined that the "slashings" were hard enough and deep enough to sever the fifth and sixth vertebrae and were too numerous to count. It was also concluded that [Milano] aspirated on his own blood for five to ten minutes before expiring.

*Laird I*, 587 A.2d at 1371.

to conceal their bloody clothing. Laird and Chester made incriminating statements to other witnesses as well. Additionally, the Commonwealth produced a "transcription of a consensually intercepted telephone call between Chester and Laird, during which Laird suggested that Chester leave town, recommended ways Chester could pass a polygraph examination, and commented on the Commonwealth's inability to prove a case without evidence." *Id.* at 1372.

*First Trial and Subsequent Proceedings*

Laird and Chester testified in their own defense at the first trial. They admitted to kidnapping Milano and being at the scene of the murder, but they each blamed the other for the killing. The jury convicted them both of first-degree murder and subsequently sentenced them to death on May 21, 1988. This Court affirmed Laird's judgment of sentence on March 20, 1991, and the Supreme Court of the United States denied further review.[6] *Laird I*, 587 A.2d at 1385, *cert. denied*, *Laird v. Pennsylvania*, 502 U.S. 849 (1991). All of Laird's subsequent PCRA claims stemming from his first trial were unsuccessful. *See Commonwealth v. Laird*, 726 A.2d 346 (Pa. 1999) ("*Laird II*").

However, Laird filed a habeas petition before the Federal District Court for the Eastern District of Pennsylvania ("Eastern District Court"), which ultimately granted him a new trial. *Laird v. Horn*, 159 F. Supp.2d 58 (E.D. Pa. 2001), *affirmed*, 414 F.3d 419 (3d. Cir. 2005), *cert. denied*, *Beard v. Laird*, 546 U.S. 1146 (2006). As the Third Circuit explained, the trial court "erred in instructing the jury on accomplice liability during the guilt phase." *Laird*, 414 F.3d at 421; *see also id.* at 427 ("Given the court's instruction on accomplice liability, the jury could easily have convicted Laird of first-degree murder based on his conspiring with Chester to kidnap or assault Milano even if jurors were not

---

[6] On direct appeal to this Court, Laird and Chester raised a litany of claims regarding both the guilty and penalty phases of the capital trial. However, because Laird was ultimately retried, those claims have no relevance to the current appeal.

convinced beyond a reasonable doubt that Laird intended to kill him.").  However, Laird's

other convictions were left undisturbed, including those for second and third-degree

murder."  *See Commonwealth v. Laird*, 988 A.2d 618, 623-24 (Pa. 2010) ("*Laird III*").

*Second Trial and Subsequent Proceedings*

The Commonwealth retried Laird in 2007.  The evidence adduced at the second

trial "was similar to that introduced in the 1988 joint trial[,]" however, Laird stipulated that

he murdered Milano and only challenged the Commonwealth's proof of the mens rea

requirement for first-degree murder—specific intent to kill.  *Id.* at 634.  To that end, Laird's

> strategy was to forward a defense of diminished capacity resulting from extreme intoxication.  In support of such defense, [Laird] presented the testimony of several expert witnesses who opined that [he] must have had a very high blood-alcohol content at the time of the killing and that this, together with brain damage sustained from a head injury earlier in his life, substantially impeded [him] from forming the requisite intent to kill.
>
> * * *
>
> The district attorney sought to cast doubt upon [Laird]'s truthfulness in this regard by referring to his testimony at his first trial (which occurred five months after the offense) in which [Laird] recounted his version of the events immediately before, during, and after the killing in significant detail.  Ultimately, the jury found [Laird] guilty of first-degree murder and set the penalty at death after unanimously concluding that the sole aggravating factor outweighed any mitigating circumstances.[1]
>
> > [1] In view of [Laird]'s kidnapping conviction at his first trial, the parties stipulated to the aggravating circumstance that he killed Milano in perpetration of a felony.  *See* 42 Pa.C.S. § 9711(d)(6). The jury did not find the other aggravating factor submitted by the Commonwealth, that the offense was committed by means of torture (*see id.*, § 9711(d)(8)).  As for mitigation, the jury determined that [Laird] had been the victim of an abusive childhood, that he suffered at the time of the offense from the effects of alcohol and substance abuse, and

> that he had a record of good conduct in prison. *See id.*, § 9711(e)(8) (the "catchall" mitigating circumstance).

*Id.* Six participating members of this Court unanimously affirmed Laird's judgment of sentence in 2010. *Id.* at 648.

Laird filed a timely, counseled PCRA petition, his first following the second trial. We affirmed the PCRA court's order dismissing all claims in 2015. *Commonwealth v. Laird*, 119 A.3d 972, 1012 (Pa. 2015) ("*Laird IV*"). During those proceedings, Laird was represented by several attorneys from the Federal Community Defender Office for the Eastern District of Pennsylvania ("Federal PD").[7] Laird subsequently sought relief before the Eastern District Court, which denied his habeas petition on August 18, 2016. *Laird v. Wetzel*, Civ. No. 11-1916, 2016 WL 4417258 (E.D. Pa. Aug. 19, 2016), *amended in part*, No. CV 11-1916, 2017 WL 2423675 (E.D. Pa. June 2, 2017). That Court also denied Laird's request for a certificate of appealability. *Id.* As of the date of this Opinion, that case remains pending before the Third Circuit. *See Laird v. Secretary PA Dept. Corrections*, No. 17-9000 (3d Cir.).[8]

### Current PCRA Petition

On November 15, 2021, less than one month after this Court issued *Bradley*, Laird filed an untimely pro se PCRA petition. By order dated December 14, 2021, the PCRA court appointed current counsel, Patrick J. McMenamin, Jr., Esquire, to file an amended petition on Laird's behalf. Laird then filed his amended petition on June 16, 2022.[9] In his

---

[7] Laird was represented by four attorneys from the Federal PD in the PCRA court, and then by two attorneys from the Federal PD on appeal before this Court.

[8] On March 10, 2020, the Third Circuit granted Laird's application for certificate of appealability limited to whether counsel at his second trial was ineffective at the 2007 sentencing hearing for failing to present a mitigation expert on his behalf.

[9] The Third Circuit denied Laird's request to stay his case before that court pending the outcome of the instant PCRA proceedings.

pro se petition, Laird raised two claims asserting that the Federal PD provided ineffective assistance of counsel ("IAC") during the litigation of the prior PCRA petition addressing his second trial by failing to adequately preserve two claims that were subsequently dismissed by the Eastern District Court due to Laird's failure to exhaust available state remedies. Pro Se PCRA Petition, 11/15/2021, at 4.[10] Laird's amended PCRA petition incorporated those two claims by reference, and further asserted two additional IAC claims targeting prior counsel. Laird's additional IAC claims involved trial counsel's failure to object to Chester's appearance in shackles and prison garb before the jury, Amended PCRA Petition, 6/16/2022, at 12-15 (hereinafter, the "Prison Garb IAC claim"); and trial counsel's failure to object to victim impact testimony, *id.* at 15-20 (hereinafter, the "Victim Impact IAC claim") (collectively, "Laird's layered IAC claims").

Laird acknowledged the untimeliness of his petition before the PCRA court, but argued that it "qualifies for an exception pursuant to 42 Pa.C.S. § 9545(b)(1)(iii) and [*Bradley*]." *Id.* Elsewhere in his petition, Laird attempted to circumvent the PCRA's time-bar altogether by alleging that the "United States is subject to international treaty obligations[,]" under Article 7 of the International Covenant on Civil and Political Rights ("ICCPR"),[11] "that foreclose the application of any of any procedural rule as a basis to deny substantive review of an alleged federal constitutional violation in a death penalty case." *Id.* at 9.

---

[10] In his pro se petition, Laird identified these two issues as an illegal sentencing claim and a double jeopardy claim, although they appear to be one and the same (hereinafter, "Laird's illegal sentencing claims").

[11] Article 7 of the ICCPR states: "No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment. In particular, no one shall be subjected without his free consent to medical or scientific experimentation." *See* ICCPR, art. 7, Dec. 19, 1966, 999 U.N.T.S. 171, 175.

On December 30, 2022, the PCRA court issued notice pursuant to Pa.R.Crim.P. 909 that it intended to dismiss the petition without a hearing.[12] Laird filed a timely response, arguing that the court had failed to adequately notify him of the reasons for dismissal in the notice. The PCRA court responded by issuing an amended Rule 909 notice. Amended Rule 909 Notice, 4/21/2023. Therein, the court held that with respect to the Prison Garb IAC claim and the Victim Impact IAC claim, Laird failed to demonstrate that he was prejudiced by his trial counsel's failure to object in both instances, *id.* at 4-5, and that both claims were untimely in any event, *id.* at 6. The amended Rule 909 notice did not speak to the claims raised in Laird's pro se petition. The PCRA court ultimately denied Laird's petition on May 31, 2023, after he failed to file a response to the court's amended Rule 909 notice. Laird then filed a timely notice of appeal and a timely, court-ordered Pa.R.A.P. 1925(b) statement.[13]

## PCRA Court Opinion

The PCRA court first addressed Laird's claim that the untimeliness of his petition was excused by our decision in *Bradley*. It observed that we changed the preexisting

---

[12] The PCRA Court's Rule 909 notice was mislabeled as a Rule 907 notice, which is the analogous provision for non-capital cases.

[13] Although not contained in the certified record, Laird's Rule 1925(b) statement, filed on July 12, 2023, was quoted verbatim in the PCRA court's Rule 1925(a) opinion. *See* PCRA Court Opinion, 7/26/23, at 6-7. In his rule 1925(b) statement, Laird first argued that the PCRA court erred by failing to apply *Bradley* to permit him to raise IAC claims targeting prior PCRA counsel at the first available opportunity. *Id.* at 6. Next, he alleged that the court erred on the merits of the Prison Garb IAC claim (and relatedly that his PCRA counsel provided ineffective assistance by failing to adequately preserve that claim for habeas review). *Id.* Third, Laird contended that the PCRA court erred on the merits of the Victim Impact IAC claim (and relatedly that his PCRA counsel provided ineffective assistance by failing to adequately preserve that claim for habeas review). *Id.* Laird also argued that the PCRA court erred when it found no merit to Laird's illegal sentencing issues. *Id.* Finally, Laird alleged that the court erred in ruling that the ICCPR "should not be extended to the states[,]" and that his death sentence should be "vacated" because political officials in Pennsylvania have determined that the enforcement of capital punishment in the Commonwealth is "inherently flawed[.]" *Id.* at 6-7.

procedure for raising IAC claims regarding PCRA counsel in *Bradley* such to permit them to be raised for the first time on appeal from the dismissal of the PCRA petition. However, the court distinguished *Bradley* because it involved a timely-filed PCRA petition. PCRA Court Opinion, 7/26/23, at 9. It noted Justice Dougherty's concurrence in *Bradley* that stated this Court was not creating an "exception to the PCRA's jurisdictional time-bar," whereby a petitioner dissatisfied with PCRA counsel "could file an untimely successive PCRA petition challenging initial PCRA counsel's ineffectiveness because it was his first opportunity to do so." *Id.* (quoting *Bradley*, 261 A.3d at 406 (Dougherty, J., concurring)) (emphasis omitted). The PCRA court further relied on *Commonwealth v. Stahl*, in which the Superior Court held that *Bradley* provided no relief for untimely PCRA petitioners. *See Commonwealth v. Stahl*, 292 A.3d 1130, 1136 (Pa. Super. 2023) ("Nothing in *Bradley* creates a right to file a second PCRA petition outside the PCRA's one-year time limit as a method of raising ineffectiveness of PCRA counsel or permits recognition of such a right."), *reargument denied* (May 16, 2023).[14] Thus, the PCRA court maintained that it did not err in concluding that Laird's claims against prior PCRA counsel were untimely. *Id.* at 10.[15]

---

[14] *See also Commonwealth v. Perrego*, 994 MDA 2022, 2023 WL 3675952 at *3 (Pa. Super. May 26, 2023) (non-precedential decision) (concluding that "[r]eliance on *Bradley* for purposes of overcoming the untimeliness of the underlying PCRA petition is misplaced"), *reargument denied* (Aug. 3, 2023), *appeal denied*, 313 A.3d 144 (Pa. 2024); *Commonwealth v. Gardner*, 2209 EDA 2023, 2024 WL 4664449, at *4 (Pa. Super. Nov. 4, 2024) (relying on *Commonwealth v. Stahl*, 292 A.3d 1130 (Pa. Super. 2023), to conclude that *Bradley* "did not create a new constitutional right, nor did it create a new exception to the PCRA's one-year time-bar").

[15] The PCRA court went on to conclude that the untimeliness of Laird's petition resulted in waiver of his claims. In that regard, the PCRA court misapprehended the nature of the PCRA's timeliness requirements. *See Commonwealth v. Banks*, 726 A.2d 374, 376 (Pa. 1999) (stating that the applicability of an exception to the PCRA's time-bar is an "issue ... of jurisdiction and not waiver").

The PCRA court also determined that Laird's claims lacked merit. It found that the presence of Chester "in the courtroom wearing prison garb and shackles" at Laird's second trial could not have prejudiced Laird because he conceded criminal culpability for the killing and, consequently, could not be tainted with an aura of criminality by Chester's appearance.[16] PCRA Court Opinion, 7/26/23, at 12. Thus, the court found that Laird's counsel was not ineffective for failing to object to Chester's appearance and, by extension, that prior PCRA counsel could not be faulted for failing to raise trial counsel's ineffectiveness *Id.* The court also found that trial counsel was not ineffective for failing to object to victim impact evidence and victim impact arguments by the prosecutor, relying on this Court's determination during Laird's direct appeal that the at-issue testimony did not qualify as victim impact evidence and that the prosecutor's arguments were well within the permissible boundaries of advocacy. PCRA Court Opinion, 7/26/23, at 13-14 (citing *Laird IV*, 119 A.3d at 1009-10).

Regarding the illegal sentencing claim raised in Laird's pro se petition, the PCRA court found that it lacked sufficient factual and legal development to state a claim for relief. *Id.* at 15 (citing *Commonwealth v. Williams*, 782 A.2d 517, 526 (Pa. 2001) ("[T]he dismissal of claims is appropriate where the pleadings are insufficient to state a claim for post-conviction relief.")). The court acknowledged that Laird alluded to the claim sounding

---

[16] "It is well-settled that a petitioner can obtain relief on an [IAC] claim only if he demonstrates that counsel's performance was deficient and that the deficiencies prejudiced the petitioner." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To show that counsel provided ineffective assistance, a petitioner must prove that "(1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice." *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009). A failure to prove any prong is fatal to an IAC claim. *Daniels*, 963 A.2d at 419. Thus, if a petitioner fails to prove he was prejudiced by the inaction of counsel, he is not entitled to relief even if the forgone objection would have been meritorious.

in double jeopardy, but that he "provided no explanation for how this claim would entitle him to relief[,]" and there was no further explanation when counsel incorporated that claim into the amended petition. *Id.* Furthermore, the PCRA court observed that this Court rejected a double jeopardy based sentencing claim during Laird's direct appeal. *Id.* at 16 (citing *Laird III*, 988 A.2d at 627-28).

Finally, the PCRA court rejected Laird's attempt to invoke the ICCPR as a means to circumvent the PCRA's time-bar. *Id.* at 17 (citing *Commonwealth v. Sneed*, 45 A.3d 1096, 1116-17 (Pa. 2012) (stating that the application of "Pennsylvania's procedural rules, as a basis to deny review ... does not violate the implementation of any international treaties") and *Commonwealth v. Quaranibal*, 763 A.2d 941, 944 (Pa. Super. 2000) (stating "it has been recognized in international law that, absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that state")). It also rejected the assertion that the death penalty was categorically barred by treaty based on this Court's decision in *Commonwealth v. Walter*, 119 A.3d 255, 294 (Pa. 2015) (rejecting reconsideration of the constitutionality of Pennsylvania's death penalty based on, inter alia, the ICCPR and the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85 ("Torture Convention")).

## Issues

Laird is before us on direct appeal from the PCRA court. *See* 42 Pa.C.S. § 9546(d). Laird raises the following claims for our review:

I. Did the PCRA court err in its determination, without a hearing, that [Laird's PCRA petition] was untimely, in that [this Court]'s ruling in ... *Bradley*[] entitles a defendant to question the effective representation of PCRA counsel at the first available moment, and where PCRA counsel continues in her representation, the defendant will not have the ability to ever question that lawyer's representation unless *Bradley* is expanded

to allow petitioners, such as [Laird] in this unique case, to file a petition under the act outside of the time constraints set forth in the act?

II. Did the PCRA court err in its determination, without a hearing, that trial counsel provided effective representation despite failing to object to the presence of the co-defendant, Frank Chester, in the courtroom in prison garb, and shackled, and on full display to the jury, where the prosecution then had a police detective identify Chester as ... Laird's co-defendant, and testify that [they] were the only two persons investigated and arrested for the murder, and that thereafter PCRA counsel also provided effective representation despite the failure to properly exhaust the claims under the Eighth and Fourteen amendments, thus procedurally defaulting the claims for purposes of habeas corpus review?

III. Did the PCRA court err in its determination, without a hearing, that trial counsel provided effective representation despite unreasonably failing to object to impermissible victim impact testimony/evidence during trial, and that thereafter PCRA counsel also provided effective representation despite the failure to properly exhaust the claims under the Eighth and Fourteen[th] Amendments, thus procedurally defaulting the claims for purposes of habeas corpus review?

IV. Did the PCRA court err in its determination, without a hearing, that the illegal sentence/double jeopardy issue contained within [Laird]'s pro se petition, and incorporated by reference in the counseled amended petition, did not have merit, where [Laird]'s state constitutional, and federal constitutional rights were violated, and [Laird] thereby is currently serving an illegal sentence based on double jeopardy grounds, as he was twice tried on the charge of murder in the first degree, while being previously convicted of murder in the second & third degrees?

V. Did the PCRA court err in its determination, without a hearing, that the [ICCPR], of which the United States is a member, should not be extended to the states in order to foreclose the cruel and unusual punishment of death at the hands of the state, where former governor Tom Wolf, and current governor Josh Shapiro, have both endorsed the understanding that the death penalty as prosecuted and enforced in Pennsylvania is inherently flawed, and that as a result there can be no debate that a sentence of death imposed upon any member of death row constitutes cruel and unusual punishment under the Pennsylvania and federal constitutions, and that such sentences should therefore be vacated if the appropriateness of such sentences can be called into question?

Laird's Brief at ix-x.

**Parties' Arguments**

Because our resolution of his first and fifth issues is dispositive, we do not reach Laird's remaining claims. Consequently, we summarize the parties' arguments only insofar as they pertain to those issues.

*Laird's Brief*

Laird admits that he had until November 29, 2011 to file a timely PCRA petition and, thus, that both his pro se and amended PCRA petitions filed in 2021 and 2022 are untimely.[17] Laird's Brief at 15. He further concedes that none of the PCRA's timeliness exceptions are applicable. *Id.* at 16. Nonetheless, he asserts that *Bradley* "permits him to litigate" IAC issues "inasmuch as [his] federal attorney represented him in the PCRA [court], on PCRA appeal before this Court, and into his federal habeas proceedings." *Id.* He filed his pro se petition in this matter immediately after we decided *Bradley*, and now argues that this "post-*Bradley* time period" was his first opportunity to raise IAC claims targeting the Federal PD's stewardship of his prior PCRA petition. *Id.*

Laird contends that in *Bradley* we recognized that Pennsylvania's collateral review procedures substantially rely on initial PCRA counsel's performance and that PCRA petitioners are entitled to vindicate the right to effective assistance during those proceedings.[18] In furtherance of that objective, this Court held that petitioners may raise

---

[17] This Court affirmed Laird's judgment of sentence on direct appeal from his second trial on February 15, 2010, and the United States Supreme Court denied review on November 29, 2010. *Laird v. Pennsylvania*, 562 U.S. 1069 (2010) (denying Laird's petition for writ of certiorari). Pursuant to 9545(b)(1), Laird then had one year (until November 29, 2011) to file a timely PCRA petition.

[18] *See Commonwealth v. Parrish*, 273 A.3d 989, 1002 (Pa. 2022) (observing that in *Bradley* we "recognized that the structure of appeal and collateral review 'places great importance on the competency of initial PCRA counsel[,]' and reasoned that 'it is essential that a petitioner possess a meaningful method by which to realize his right to effective PCRA counsel'") (quoting *Bradley*, 261 A.3d at 401).

IAC claims against prior PCRA counsel at the first opportunity to do so.[19] Laird recognizes that *Bradley* concerned a timely PCRA petitioner who sought to raise claims regarding his prior PCRA counsel's ineffectiveness on direct appeal from the PCRA court. Laird's Brief at 19. However, for the same reason, he asserts that *Bradley* did not answer whether the first-opportunity rule would apply to a "successive PCRA petition" filed "outside of the time-bar." *Id.* at 20.

Laird insists that a successive and untimely PCRA petition was his first opportunity to challenge the Federal PD's stewardship of his prior petition. *Id.* He contends that the Federal PD litigated the Prison Garb and Victim Impact IAC claims before the PCRA court but later abandoned or failed to adequately develop those claims on direct appeal, causing Laird to procedurally default on those issues for purposes of habeas review. *Id.* Laird avers that until he filed the at-issue petition, his Federal PD remained his counsel and, thus, he was unable to challenge prior PCRA counsel's stewardship of his timely petition.[20] He argues that "the reality of PCRA litigation" is such that state prisoners "do not have the ability or the wherewithal to take ... steps to remove and challenge PCRA counsel[,]" particularly where the one-year period for filing a timely PCRA petition is quickly consumed by the litigation of a first, timely-petition. *Id.* at 21-22. Laird claims this results in some petitioners being left with "no ability whatsoever to question the representation afforded by PCRA counsel." *Id.* at 22. In his case, Laird avers that he began to question the Federal PD's handling of his state PCRA proceedings in 2017, but "counsel remained in the case." *Id.*

---

[19] We decided in *Bradley* to allow "a PCRA petitioner to raise [IAC claims concerning prior PCRA counsel] at the first opportunity to do so, even when on appeal." *Bradley*, 261 A.3d at 401.

[20] Counsel is not permitted to raise their own ineffectiveness because it creates a conflict of interest. *See Bradley*, 261 A.3d at 398.

In light of these circumstances, Laird contends that *Bradley* "should be expanded to provide relief" where "PCRA counsel continues in her representation after the one-year time[-]bar period has run." *Id.* at 22-23. He asserts that individuals in his position "should at least be afforded an evidentiary hearing" to "flesh out whether in depth post-conviction review is appropriate." *Id.* at 22.

Separately, Laird seeks relief pursuant to ICCPR on two fronts. *Id.* at 29-34. As he asserted below, Laird continues to argue that the ICCPR precludes "the application of any procedural rule as a basis to deny substantive review of an alleged federal constitutional violation in a death penalty case." *Id.* at 31. He further asserts that the Senate understood the ICCPR to be co-extensive with the Eighth Amendment. He contends that, as such, the ICCPR prohibits cruel and unusual punishment resulting from **the delay** in his execution, particularly given statements by public officials regarding our Commonwealth's continued application of capital punishment.[21] In this political environment, Laird alleges that it is cruel and usual to have the death penalty hanging over his head for decades while politicians debate its continuation.[22]

In addition to arguing the merits of Laird's layered IAC claims, *see* Laird's Brief at 23-28, current counsel concedes that Laird's illegal sentencing claims were previously

---

[21] Laird notes the executive moratorium on the death penalty that has been in place during both the current and prior governors' terms. Laird's Brief at 30-31. In particular, he cites current Governor Josh Shapiro's official statement indicating his intention to continue prior Governor Tom Wolf's moratorium, and his contemporaneous call for the General Assembly to abolish capital punishment. *Id.* (citing Governor Josh Shapiro, Governor's Newsroom, Official Website of the Commonwealth of Pennsylvania, https://www.pa.gov/governor/newsroom/press-releases/governor-shapiro-announces-he-will-not-issue-any-execution-warra.html (last visited January 6, 2025)). Laird further calls our attention to a pending bill to abolish the death penalty before the General Assembly.

[22] Laird declares that "it is difficult to debate against the notion that in Pennsylvania continuing to detain persons ... under sentences of death is cruel and unusual punishment under both the state and federal constitutions." Laird's Brief at 33.

litigated,[23] *id.* at 28 ("After more closely reviewing the PCRA court's Rule 90[9] Notice of Intention to Dismiss, this Court's opinion on direct review ... and Laird's Brief filed in the direct appeal before this Court following re-trial, the undersigned agrees with the PCRA court's determination that this post-conviction issue lacks merit as the issue has been previously litigated.").

*Commonwealth's Brief*

The Commonwealth maintains that Laird's PCRA petition is untimely without any applicable statutory exception, noting at the outset that Laird has conceded as much. Commonwealth's Brief at 8. It further argues that neither *Bradley* nor the ICCPR provides an alternative route to circumvent the PCRA's timeliness requirements. *Id.*

The Commonwealth contends that Laird's reliance on *Bradley* as argued before this Court has been waived. It maintains that Laird specifically argued before the PCRA court that *Bradley* "constituted a newly recognized right of constitutional law" for purposes of the timeliness exception set forth in Section (b)(1)(iii) of the PCRA. *Id.* at 12. The Commonwealth contends that Laird has abandoned that argument, and now contends that *Bradley* should be extended to establish an independent, equitable exception to the PCRA's time-bar. The Commonwealth urges that Laird's failure to present that argument before the PCRA court should result in waiver of the claim pursuant to Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). *Id.*

Even if not waived, the Commonwealth argues that this Court has long-maintained that it will not countenance equitable exceptions to the PCRA's legislatively-mandated jurisdictional time-bar. *Id.* at 13. The Commonwealth notes that, in *Commonwealth v.*

---

[23] To be eligible for relief under the PCRA, a petitioner must plead and prove that "the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3).

*Fahy*, 737 A.2d 214 (Pa. 1999), this Court firmly established that the PCRA's time limitations are "mandatory and interpreted literally[;]" this Court has "no authority to extend filing periods except as the statute permits[;]" the time limitations are "not subject to equitable principles[;]" and that the sole bases for extending the PCRA's deadlines are found in Section 9545(b). *Id.* (quoting *Fahy*, 737 A.2d at 222).

Furthermore, the Commonwealth contends that by its own terms *Bradley* did not create an equitable exception as Bradley sought to challenge PCRA counsel's effectiveness during his appeal from a timely-filed PCRA petition. In the Commonwealth's view, this Court specifically rejected a call to permit petitioners "to overcome the time-bar with their ineffective assistance of PCRA counsel claims" when crafting a new procedure in *Bradley* to permit IAC challenges to PCRA counsel at the first opportunity to do so. *Id.* at 14 (citing *Bradley*, 261 A.2d at 401 n.18). The Commonwealth contends that Laird misinterprets Justice Dougherty's concurrence as inviting a future petitioner to "to argue for an expansion to the time-bar[,]" as Justice Dougherty had instead "repeatedly and unequivocally emphasized that the decision rendered by the majority of the Court in *Bradley*" did not authorize untimely petitions to raise prior PCRA counsel's stewardship. *Id.* The Commonwealth also points to decisions by the Superior Court that have declined to extend *Bradley* in order to bypass the PCRA's timeliness requirements. *Id.* at 15 (citing *Stahl* and *Commonwealth v. Pridgen,* 305 A.3d 97, 100 (Pa. Super. 2023)). For these reasons, the Commonwealth contends that the PCRA court did not err in rejecting Laird's claim that *Bradley* authorized his untimely petition.

As to Laird's treaty-based claims, the Commonwealth asserts that only self-executing treaties[24] apply directly to Pennsylvania through the Supremacy Clause of the

---

[24] A self-executing treaty is one "that when signed by a party becomes the party's domestic law equivalent to an act of the legislature and judicially enforceable." TREATY, Black's Law Dictionary (12th ed. 2024). "A self-executing treaty is effective without any (continued…)

United States Constitution.[25]  Commonwealth's Brief at 18 (citing *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 346 (2006)).  The Commonwealth stresses that this Court held in *Commonwealth v. Judge*, 916 A.2d 511 (Pa. 2007), *cert. denied sub nom., Judge v. Pennsylvania*, 552 U.S. 1011 (2007),  that "while the United States has ratified the ICCPR, it specifically declared that the provisions of that treaty were not self-executing and thus were unenforceable in the United States absent enabling legislation passed by Congress."  Commonwealth's Brief at 18.  It further notes that the Supreme Court of the United States reached the same conclusion in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004).  *Id.* (citing *Sosa*, 542 U.S. at 735 (observing that "the United States ratified the [ICCPR] on the express understanding that it was not self-executing")).  According to the Commonwealth, nothing has changed since we decided *Judge*, nor has Laird cited to any authority that would create an enforceable remedy under the ICCPR to prohibit the death penalty or to circumvent the PCRA's jurisdictional time-bar.  *Id.* at 19.

Insofar as Laird contends that the delay of his death sentence itself constitutes cruel and unusual punishment specifically prohibited by the ICCPR, the Commonwealth contends he waived that claim under Pa.R.A.P. 302(a) due to his failure to present it in the PCRA court, and separately due to his lack of meaningful development of the issue.  *Id.* at 16-17.  In any event, the Commonwealth argues that Lairds novel cruel-and-unusual punishment claim is meritless because the delay in implementing his sentence is self-imposed, regardless of the moratoria issued by the current and prior governors.  *Id.* at 19

---

implementation by Congress."  *Id.*  A non-self-executing treaty is one "whose commitments do not automatically have effect as domestic law and require legislation to make them effective and enforceable."  *Id.*

[25]  The Supremacy Clause states: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.

(stating Laird's "death sentence is not being delayed because of the gubernatorial edict[s,]" but has instead been "delayed because of stays of execution which were entered by the courts at his request, pending the outcome of his continued litigation").

*Laird's Pro Se Letter*

After his brief was submitted to this Court by his current counsel, Laird filed a pro se letter alleging that current counsel provided ineffective assistance. Laird's Pro Se Letter, 1/4/2024. Therein he alleges that Attorney McMenamin was ineffective: 1) for arguing that the Laird's illegal sentencing claim had been previously litigated, *id.* ¶¶ 2-5; 2) for failing to advance the argument that the PCRA court should have treated Laird's pro se petition as a habeas corpus petition if relief was not available through the PCRA, *id.* ¶ 6; and 3) for failing to "engage in meaningful communication" with Laird with regard to his case, *id.* ¶ 7. For these reasons, Laird asks for the removal of Attorney McMenamin and requests the appointment of new counsel. *Id.* ¶ 8.

Subsequently, Attorney McMenamin immediately filed an application to withdraw, wherein he further requested that new counsel be appointed to represent Laird. Application to Withdrawal as Court-Appointed PCRA Counsel and for the Appointment of New PCRA/Appellate Counsel, 1/4/2024. Therein, Attorney McMenamin denied providing ineffective assistance to Laird. *Id.* ¶ 13. Nonetheless, Attorney McMenamin believes that Laird effectively discharged him by seeking removal and challenging his stewardship, requiring Attorney McMenamin to seek to withdraw. *Id.* ¶¶ 9-10.

## Analysis

Our standard of appellate review of the denial of an untimely PCRA petition is well settled. We review the factual findings of the PCRA court to ensure they are supported by the record, and we apply a de novo standard of review to its legal conclusions. *Commonwealth v. Lopez*, 249 A.3d 993, 998 (Pa. 2021). Pennsylvania "courts are

prohibited from considering an untimely PCRA petition." *Id.* at 999. This is because we have "construed the PCRA's timing provisions as jurisdictional in nature, and[,]" thus, "no court may entertain an untimely PCRA petition." *Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020). Consequently, we do not reach the merits of an untimely petition under any circumstances—even in cases involving the death penalty, and even if it is alleged that the petition's untimeliness is due to the ineffective assistance of counsel. *See Commonwealth v. Abu-Jamal*, 833 A.2d 719, 723-24 (Pa. 2003); *see also Fahy*, 737 A.2d at 222 ("Jurisdictional time limits go to a court's right or competency to adjudicate a controversy. These limitations are mandatory and interpreted literally; thus, a court has no authority to extend filing periods except as the statute permits."). Likewise, the PCRA's time-bar also applies to claims that the underlying sentence is illegal. *Fahy*, 737 A.2d at 223.

Any PCRA petition must be filed within one year of the date the petitioner's judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). However, the General Assembly provided for three exceptions to this jurisdictional time-bar. *Id.* § 9545(b)(1)(i-iii). This court has repeatedly disavowed the use of equitable principles to expand or bypass these statutorily-defined exceptions. *See Fahy*, 737 A.2d at 222.

Thus, we must first address whether jurisdiction lies to consider Laird's PCRA petition before we can address his claims. Laird makes several critical concessions in this regard. First, he understandably concedes that his petition is untimely, as it was filed long after the expiration of Section 9545(b)(1)'s one-year time-bar.[26] Second, Laird avers that he is not seeking relief under any of the three statutorily-defined exceptions. Nonetheless, Laird argues that *Bradley* provides an equitable exception, and/or the

---

[26] This is beyond dispute. Laird sought review by the United States Supreme Court in 2010. He filed his pro se petition in this matter in 2021. This was well beyond the one-year deadline provided by Section 9545(b)(1).

ICCPR provides a treaty-based exception to the PCRA's time-bar. We disagree on both fronts.

*Proposed Bradley Exception*

Laird first argues that our decision in *Bradley* extends (or must be extended) to include the opportunity to challenge prior PCRA counsel's effectiveness in a serial PCRA petition, even if it is untimely. However, we agree with the Commonwealth that not only did *Bradley* say no such thing, but that the rationale of that decision cannot be extended to circumvent the PCRA's jurisdictional time-bar.[27]

In *Bradley*, we reconsidered the appropriate "procedure for enforcing the right to effective counsel in a [PCRA] proceeding[,]" under circumstances where all the parties before us had recognized the inadequacy of the only existing procedure[28] but had offered differing proposals on how to fix it. *Bradley*, 261 A.3d at 383. Under the facts of that case, Bradley argued his PCRA counsel was ineffective "for failing to follow established procedure for the presentation of certain claims, failing to present meritorious claims, and presenting previously litigated claims to the court," causing the PCRA court to dismiss his

---

[27] Insofar as the Commonwealth contends this issue is waived because Laird only advanced an argument in his amended PCRA petition that *Bradley* established a new constitutional right for purposes of Section 9545(b)(1)(iii), we decline to find waiver in this instance. While far from a model of issue preservation, Laird argued in his amended petition that his petition "qualifies for an exception pursuant to [Section] 9545(b)(1)(iii) **and** []*Bradley*[.]" Amended PCRA Petition, 6/16/2022, ¶ 121 (emphasis added). His subsequent discussion would tend to support a view that *Bradley* established a new constitutional right and/or an equitable exception to the PCRA's time-bar. *See Id.* ¶¶ 122-30.

[28] Under the prior regime, it was "incumbent upon a petitioner to raise a claim of PCRA counsel's ineffectiveness before the PCRA court ... within the 20-day response period" provided by Rule 907. *Bradley*, 261 A.3d at 386. That rule stemmed from our decision in *Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009), where, "[i]n two footnotes, we determined that the failure to raise PCRA counsel's ineffectiveness in response to the PCRA court's Rule 907 notice resulted in a waiver of such claims, as a petitioner could not raise PCRA counsel's ineffectiveness for the first time on appeal because it constituted a prohibited serial PCRA petition." *Id.*

timely PCRA petition without a hearing. *Id.* at 386. However, Bradley had failed to timely respond to the PCRA court's Rule 907 notice. Instead, on appeal before the Superior Court and represented by new PCRA counsel, Bradley sought remand to the PCRA court in order to raise IAC claims targeting Bradley's counsel before the PCRA court. *Id.* at 385. The Superior Court denied the request, finding "itself constrained to affirm the PCRA court's order" because Bradley had "waived his challenge to the adequacy of PCRA counsel's effectiveness under" the rule established in *Pitts*. *Id.*

We granted review of the Superior Court's decision in order to consider the adequacy of the *Pitts* rule and whether it was appropriate to replace it with an alternative. *Id.* at 386. We noted that a "meaningful and efficient procedure to protect and enforce a PCRA petitioner's right to effective assistance of counsel on collateral review has been elusive." *Id.* a 389. Importantly, we recognized that a PCRA petitioner

> has a rule-based right to the appointment of counsel for a first PCRA petition. *See* Pa.R.Crim.P. 904. Pursuant to our procedural rule, not only does a PCRA petitioner have the right to counsel, but he is also entitled to the effective assistance of counsel. *See Commonwealth v. Albert*, 561 A.2d 736, 738 (Pa. 1989) (holding that rule-based right to counsel in a PCRA proceeding embodies the "concomitant right to effective assistance of counsel" in the PCRA court); *see also Commonwealth v. Albrecht*, 720 A.2d 693, 699-700 (Pa. 1998) (appointment of counsel pursuant to [Pa.R.Crim.P. 904] carries with it an "enforceable right to effective post-conviction counsel"). The guidance and representation of an attorney during collateral review ensures that meritorious legal issues are recognized and addressed, and that meritless claims are abandoned.

*Id.* at 391-92 (citations reformatted).

Nonetheless, we acknowledged that there was "no formal mechanism" to challenge the effectiveness of PCRA counsel, "much less ... a formal mechanism designed to specifically capture claims of trial counsel ineffectiveness defaulted by initial-review PCRA counsel." *Id.* at 392 (quoting *Commonwealth v. Holmes*, 79 A.3d 562, 583-

84 (Pa. 2013)). In *Commonwealth v. Ligons*, 971 A.2d 1125 (Pa. 2009) (plurality), a capital case, the six participating members of this Court split into two equal camps, with three Justices, led by then-Justice Baer, agreeing that a petitioner could raise IAC claims for the first time on appeal in the lead opinion, while the other three Justices, led by then-Chief Justice Castille, "rejected *in toto* the notion that a petition may advance new claims of PCRA counsel's ineffectiveness on appeal." *Id.*[29] Although he joined the lead opinion, then-Justice Saylor wrote separately to suggest that "as long as the Court's jurisdiction was secure, the Justices were authorized to consider challenges to the fundamental fairness of PCRA proceedings," thereby permitting us to remand "for additional proceedings, including the consideration of whether leave should be granted to amend the pleadings to raise claims of deficient stewardship on the part of post-conviction counsel." *Id.* (citing *Ligons*, 971 A.2d at 1173 (Saylor, J., concurring and dissenting)).

Five months later we decided *Pitts*. In that case, the Superior Court determined that PCRA counsel, who had filed a no-merit letter in the PCRA court, had failed to comply with the requirements of *Commonwealth v. Turner*, 544 A.2d 927(Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988), and we granted review to determine whether the Superior Court had altered those requirements. During our review of that claim, this Court again confronted the same dispute that divided the Court in *Ligons*. However, in *Pitts*, a Majority view emerged (adopting Chief Justice Castille's position from *Ligons*) that required IAC claims targeting PCRA counsel to be raised in response to a PCRA court's Rule 907 notice. *See Bradley*, 261 A.3d at 395-96. Although *Pitts* concerned PCRA counsel's ineffectiveness in the context of a *Turner/Finley* no-merit

---

[29] Chief Justice Castille's view was driven by his understanding that there is no constitutional right to PCRA counsel, and that the rule-based right described by this Court in *Albert* and *Albrecht*, do not require "the same exacting standards afforded to individuals with a Sixth Amendment constitutional right to counsel[.]" *Bradley*, 261 A.3d at 396 (citing *Ligons*, 971 A.2d at 1167-69 (Castille, C.J., concurring)).

letter, its holding regarding "the Rule 907 approach" to raising PCRA counsel's ineffectiveness (which prohibited raising such claims for the first time on appeal) was eventually extended to apply in all PCRA cases. *Id.* at 397 (compiling cases).

In reconsidering the Rule 907 approach, we noted in *Bradley* that Rule 907 does not mention IAC claims, nor does it advise petitioners that failure to raise IAC claims targeting PCRA counsel results in waiver. *Id.* at 398. To the contrary, Rule 907 portrays "a petitioner's filing of a response to a dismissal notice [as] discretionary." *Id.* Furthermore, we found that the Rule 907 procedure for raising PCRA counsel ineffectiveness was "unsound." *Id.* In this regard, we recognized four possibilities: 1) the same PCRA counsel raises her own ineffectiveness; 2) the petitioner raises the claim while represented by the same counsel; 3) the petitioner raises the claim pro se; or 4) the petitioner obtains new counsel to raise PCRA counsel's ineffectiveness. *Id.* The first two scenarios were already prohibited by our caselaw.[30] Under the third scenario, we recognized that a pro se petitioner had a substantial burden to perceive ineffectiveness in response to a Rule 907 notice that is often no more than a "cursory statement," and that raising a claim of layered ineffectiveness is "a challenging task at times even for accomplished practitioners[.]" *Bradley*, 261 A.3d at 399. While the final scenario may facially appear better, it still requires the pro se petitioner to perceive the ineffectiveness so as to induce him to secure new counsel, and for new counsel to prepare a response, all within the short twenty-day response period dictated by Rule 907. *Id.* All considered,

---

[30] Generally, "counsel cannot argue his or her own ineffectiveness." *Commonwealth v. Spotz*, 18 A.3d 244, 329 n.52 (Pa. 2011). Additionally, we generally prohibit hybrid representation. *See Commonwealth v. Jette*, 23 A.3d 1032, 1041-42 (Pa. 2011).

we concluded in *Bradley* that "the Rule 907 approach" was "largely impractical and ineffective." *Id.*[31]

Thus, we turned to consider the alternatives offered by the parties. Ultimately, we adopted "the essence of the approach set forth by the dissenters in *Pitts*: allowing a PCRA petitioner to raise claims of ineffective assistance of counsel at the first opportunity to do so, even when on appeal." *Id.* at 401. In doing so, however, we considered and rejected the approach suggested by Bradley and endorsed by the Pennsylvania Innocence Project. They argued that, because PCRA appointments typically "remain in place through [the PCRA] appeal[,]" only permitting IAC claims targeting PCRA counsel during the PCRA appeal "would not be a workable remedy for an indigent prisoner[.]" *Id.* at 387. They instead proposed that petitioners should be permitted to file a serial PCRA petition "invoking the PCRA's 'new fact' exception to the one-year time-bar, and, thus, construing PCRA counsel's ineffectiveness as a 'new fact' allowing for the filing of a new PCRA petition." *Id.* at 388 (citing 42 Pa.C.S. § 9545(b)(1)(ii)). We declined to adopt that proposal because:

> We have repeatedly rejected such an understanding of the "new fact" exception to the PCRA's one-year time[-]bar. *See Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 785 (Pa. 2000) ("[S]ubsequent counsel's review of previous counsel's representation and a conclusion that previous counsel was ineffective is not a newly discovered 'fact' entitling Appellant to the benefit of the exception for after-discovered evidence."); [*Commonwealth v.*] *Pursell*, 749 A.2d [911,] 916-17 [(Pa. 2000)] (finding claim of ineffective assistance of counsel layered upon a claim of trial counsel ineffectiveness was based upon facts that existed at time of trial, and did not fall within the "new facts" exception to the time[-]bar).

*Bradley*, 261 A.3d at 404 n.18 (citations reformatted).

---

[31] The *Bradley* Court went on to find that the Rule 907 approach in *Pitts* and the many cases that followed and applied it more broadly to all IAC claims targeting PCRA counsel was largely based on dicta. *See Bradley*, 261 A.3d at 399-401.

Moreover, in adopting the current approach in *Bradley*, we were mindful that we were balancing "equally legitimate concerns" regarding "a petitioner's right to effective PCRA counsel" and the principle "that criminal matters be efficiently and timely concluded." *Id.* at 405. The PCRA's one-year time-bar, expressed unambiguously in Section 9545(b)(1), is the mechanism by which the latter interest is enforced, and our decision in *Bradley* deliberately avoided confrontation with that legislative mandate by rejecting what was likely a more efficient way of vindicating a petitioner's right to effective assistance by PCRA counsel—permitting a serial petition.

Capturing the resolution of these competing concerns, Justice Dougherty opined in a concurring opinion that our decision did "not create an exception to the PCRA's jurisdictional time-bar, such that a petitioner represented by the same counsel in the PCRA court and on PCRA appeal could file an untimely successive PCRA petition challenging initial PCRA counsel's ineffectiveness because it was his 'first opportunity to do so.'" *Bradley*, 261 A.3d at 406 (Dougherty, J., concurring). With the appropriate facts before us today, we agree with Justice Dougherty's statement about the limits of our holding in *Bradley*, and further with his representation that "it is well-settled under our precedent that the PCRA confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act." *Id.* at 406-07 (internal citations, brackets, and quotation marks omitted). *Bradley* did not create an exception to the PCRA's time-bar, and we expressly decline to create one today. Although we recognize that the approach we adopted in *Bradley* is far from perfect, only the General Assembly has the power to create timeliness exceptions for this or any other conceivable circumstance in which vindication of the rule-based right to PCRA counsel may be subject to inequity due to the PCRA's time-bar.

This Court considered even more egregious circumstances than Laird's in *Commonwealth v. Robinson*, where the petitioner sought to raise prior-PCRA counsel's (per se) ineffectiveness for failing to file a brief in an appeal from the denial of Robinson's timely, first PCRA petition. *Commonwealth v. Robinson*, 837 A.2d 1157, 1159 (Pa. 2003). The PCRA court granted relief following Robinson's filing of a subsequent but untimely PCRA petition by entering an order permitting Robinson "the right to file an appeal nunc pro tunc from the June 29, 1998 order dismissing [his] first PCRA petition." *Id.* The Commonwealth appealed, and the Superior Court held that since Robinson's "serial PCRA petition either renewed issues that were raised and rejected in his initial PCRA petition or sought reinstatement of the initial PCRA appeal, it would be considered a mere 'extension' of the first petition which would not be subject to the PCRA's time restriction." *Id.* at 1160.

We rejected that logic in *Robinson*, emphasizing that the PCRA's time-bar was jurisdictional in nature, that this Court has no authority to fashion equitable exceptions thereto, and that we had previously held that the time-bar was constitutionally valid in *Commonwealth v. Peterkin*, 722 A.2d 638, 642-43 (1998).[32] *Id.* at 1161. We held in

---

[32] In *Peterkin*, the petitioner filed a petition styled both as a PCRA petition and a habeas corpus petition. Therein he alleged claims that "were cognizable under the PCRA" and, therefore, could not be raised under the auspices of a habeas corpus petition. *Peterkin*, 722 A.2d at 640-41. However, his PCRA petition was untimely without an applicable exception. *Id.* at 642. Considering a constitutional challenge to the denial of Peterkin's right to file for habeas relief due to the time limitations of the PCRA, we held that

> the PCRA's time limitation upon the filing of PCRA petitions does not unreasonably or unconstitutionally limit Peterkin's constitutional right to habeas corpus relief. At some point litigation must come to an end.[5] The purpose of law is not to provide convicted criminals with the means to escape well-deserved sanctions, but to provide a reasonable opportunity for those who have been wrongly convicted to demonstrate the injustice of their conviction. The current PCRA places time limitations on such claims of error, and in so doing, strikes a

(continued…)

*Robinson* that because neither "the language of the statute nor this Court's decisional law authorizes suspension of the time-bar in instances where the petitioner is seeking nunc pro tunc appellate relief or reiterating claims which were litigated on a previous petition, the statute obviously cannot bear Superior Court's interpretation." *Id.* at 1161-62. Thus, even where prior PCRA counsel's ineffectiveness was apparent from the record (a matter far from obvious in this case), we declined to apply an equitable exception to the PCRA's jurisdictional time-bar to correct that unfairness.

Today, we put to rest any residual doubt regarding *Bradley*'s viability as an equitable exception to the PCRA's time-bar. As we stated in *Abu-Jamal*, IAC claims cannot generate equitable exceptions to the PCRA's time-bar. *Abu-Jamal*, 833 A.2d at 724 (stating that "couching claims in ineffectiveness terms does not save an untimely petition"). Because courts lack jurisdiction to hear an untimely PCRA petition, they necessarily lack jurisdiction to consider ancillary matters like IAC claims. *See id.* at 723-24.

---

reasonable balance between society's need for finality in criminal cases and the convicted person's need to demonstrate that there has been an error in the proceedings that resulted in his conviction.

[5] Peterkin's claim that his petition for post-conviction relief cannot be dismissed as untimely because it is couched in terms of ineffectiveness of counsel is without merit. We hold herein that the time restrictions for filing PCRA petitions are constitutional; that this petition is out of time; and that it does not meet any exceptions to the time-for-filing requirement. None of the claims in the petition, therefore, including the claim of ineffectiveness of counsel, is cognizable on collateral review.

*Id.* at 643.

When we decided *Bradley*, this Court was acutely aware of the jurisdictional problem of raising IAC claims in an untimely petition. Laird is correct insofar as he argues that we did not specifically decide the question before us today because *Bradley* involved a timely-filed PCRA petition. However, the writing was on the wall when we rejected a remedy in *Bradley* that would have encompassed the circumstances presented here (putting aside questions regarding whether Laird could also establish the requirements of Section 9545(b)(2)). The reason for this is clear—as a jurisdictional matter, it makes no difference what types of claims are raised or the circumstances under which the claims arise with regard to whether a PCRA petition is timely or meets a timeliness exception. If claims are cognizable under the PCRA,[33] but are filed in an untimely manner without an applicable exception, no court has the lawful authority to adjudicate those claims. *See Robinson*, 837 A.2d at 1162 (stating that the PCRA "provides the exclusive vehicle for obtaining state collateral relief on claims which are cognizable under the PCRA."). Moreover, this Court "has no authority to carve out equitable exceptions to statutory provisions." *Commonwealth v. Antyane Robinson*, 139 A.3d 178, 187 (Pa. 2016). Accordingly, we conclude that Laird's first issue lacks merit.

*Proposed ICCPR Exception*

Next, Laird contends that the ICCPR provides a means to circumvent the PCRA's jurisdictional requirements. He argues, without citation to any controlling authority, that the ICCPR prohibits "the application of any procedural rule as a basis to deny substantive review of an alleged federal constitutional violation in a death penalty case." Laird's Brief at 31.

---

[33] IAC claims are specifically identified as cognizable under the PCRA in Section 9543(a)(2)(ii).

Under the Supremacy Clause of the United States Constitution, "all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. However, as we explained in *Judge*, the ratification of a treaty by the Senate "is not by itself sufficient to mandate enforcement of a non-self-executing treaty." *Judge*, 916 A.2d at 525. For non-self-executing treaties to create "judicially-enforceable rights[,]" they must first be "given effect implemented by legislation." *Id* (quoting *Auguste v. Ridge*, 395 F.3d 123, 133 n.7 (3d Cir. 2005)). By contrast, a self-executing treaty binds the state and federal courts alike. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 346-47 (2006). In *Judge*, we recognized that, in ratifying the ICCPR, the United States Senate "specifically declared that it was not self-executing during the ratification process." *Id*. Laird does not aver that the ICCPR, or any subset thereof, has been implemented via legislation since we decided *Judge*. Thus, the ICCPR cannot be invoked to supersede the PCRA's time-bar.

Moreover, under international law, the procedural rules of the forum state govern the implementation of a treaty "absent a clear and express statement to the contrary[.]" *Sanchez-Llamas*, 548 U.S. at 351 (quoting *Breard v. Greene*, 523 U.S. 371, 375 (1998)). In *Breard*, the Supreme Court of the United States rejected the proposition that a treaty could trump its procedural default doctrine, noting that the Court's procedural defaults apply to the Constitution itself, which is law supreme to any established by treaty. *Id*. (citing *Breard*, 523 U.S. at 376). Here, Laird offers no citation to any "clear and express statement" in the ICCPR that stands in direct conflict with the PCRA's time-bar. Thus, even if the ICCPR were self-executing or otherwise implemented by legislation, Laird would still not be entitled to relief. His bald claim to the contrary lacks merit.

As the PCRA court noted, we rejected a nearly identical claim in *Sneed*, albeit in the context of a timely PCRA petition that did not involve the death penalty, holding that

"the United States government's treaty obligations do not preclude the application of state procedural rules to bar judicial review of that claim." *Sneed*, 45 A.3d at 1117. In that case, the petitioner similarly argued that "the ICCPR bars the application of any state procedural rule as a basis to deny substantive review" of a federal constitutional claim. *Sneed*, 45 A.3d at 1116. Citing *Judge*, *Breard*, and *Sanchez-Llamas*, we found Sneed's claim to be "wholly baseless." *Id.* at 1117.

We reaffirm our holdings in *Judge* and *Sneed*, albeit in a new context. This Court cannot enforce non-self-executing treaties "which Congress has not chosen to incorporate into our domestic legal system." *Judge*, 916 A.2d at 526. Furthermore, international treaties do not trump our Commonwealth's procedural rules absent clear and express language to the contrary. *Sneed*, 45 A.3d at 1117. For both reasons, the ICCPR cannot excuse the untimeliness of Laird's PCRA petition.[34]

---

[34] Laird also contends that the ICCPR and the Torture Convention forbid the death penalty insofar as they prohibit cruel and unusual punishment, coextensive with the Eighth Amendment, and/or that they prohibit his continued detention under threat of the death penalty inducted by a multi-administration moratorium on capital punishment. We cannot reach claims that a treaty barred Laird's sentence (or his continued detention under the threat of capital punishment) due to the untimeliness of his petition.

Nevertheless, we agree with the Commonwealth that Laird waived these issues. First, as to the Torture Convention, although Laird discussed that treaty in his amended PCRA petition, he failed to mention it all as a basis for any form of relief in his Pa.R.A.P. 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement ... are waived."). Regardless, insofar as Laird is challenging his sentence (or the delay in the execution of his sentence) as cruel and unusual under any treaty, any such claim is waived because it was not presented before the PCRA court in either his pro se or amended petitions. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Laird did not ask the PCRA court to vacate his death sentence based on those treaties; he only argued that the treaties prohibited application of the PCRA's time-bar to his other claims. *See* Amended PCRA Petition, 6/16/2022, at 9-12. The first mention of a claim that his sentence should be vacated based on the ICCPR appeared in Laird's Rule 1925(b) statement.

*Remaining Issues*

Because his petition is untimely without any applicable exception, we do not reach Laird's layered IAC claims and illegal sentencing claims. Furthermore, because none of the allegations made by Laird concerning his current PCRA counsel's representation would affect our decision concerning the timeliness of his petition, we dismiss as moot his pro se requests asking this Court to remove current counsel and to appoint new counsel, and current counsel's application to withdraw.

## **Conclusion**

For the reasons set forth above, we affirm the decision of the PCRA court to dismiss Laird's PCRA petition as untimely.

Chief Justice Todd and Justices Dougherty, Wecht, Mundy, Brobson and McCaffery join the opinion.